FILLINGHAM, Respondent, vs. NICHOLS and wife, Appellants.

*October 13 — October 30, 1900.*

*Trusts and trustees: Absolute conveyance: Execution and suppression of deed: Evidence.*

1. In the absence of fraud, accident, or mistake the grantor will not be permitted to prove that a deed absolute on its face was given in trust for his benefit.
2. Findings of the trial court to the effect that at the time of the execution of a deed by plaintiff and her husband (since deceased) to defendant the latter executed a conveyance of the same land to plaintiff, and that afterwards, having possession of both instruments, defendant fraudulently suppressed or destroyed the conveyance to plaintiff, and hence that the defendant should be compelled to convey to plaintiff or the title be vested in her by judgment, are *held* not to be supported by sufficient evidence.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge.   *Reversed.*

This action was commenced to compel the defendants to deed to the plaintiff certain property described in the complaint, situated in the city of Beloit, Wisconsin. The facts disclosed by the evidence and the findings are as follows: The plaintiff and Robert Hall were husband and wife, and in

1894 Hall was seventy-five years of age, and plaintiff sixty-one. Hall died February 20, 1896, leaving no children, the plaintiff being his sole heir. The defendants are husband and wife. Hall took the defendant *John Nichols* into his family when he was about three years of age, and always treated him as a son. Hall had children, but all of them were dead. The plaintiff was his second wife. In 1894 Hall owned the property described in the complaint, which consisted of three store buildings and the land upon which they were situated, yielding an average yearly income of about $900 or $1,000. He also had a homestead, worth from $1,500 to $3,000, life insurance of the face value of $4,100, a note of *Nichols* for $1,000, and other personal property of the value of about $300. On August 9, 1894, Hall and plaintiff executed and delivered to *Nichols* a warranty deed of the three store buildings, which was recorded September 20, 1898. The plaintiff claims, and the court so found, that at the time of this transaction Hall desired to convey this property to her; that he believed the only method of so doing was to deed to a third party; that he had confidence in *Nichols*, and, upon his promise to convey the property to plaintiff, the deed above mentioned was made for the sole and only purpose of getting the title to said premises in plaintiff.

Findings 6 and 11 — the ones most vigorously attacked — are as follows: "(6) That the said *John Nichols* about the same time conveyed said premises to this plaintiff, and that both of said deeds were placed in a drawer in the safe then in the store of said *Nichols*, with the other papers of said Robert Hall in the drawer of said safe of said *John Nichols*, and where at the time the said Hall kept his papers, and to which drawer the said Hall had a key." "(11) That on or about the 28th day of September, 1898, and at the time when this plaintiff was very sick, said *John Nichols*, with intent to cheat and defraud the plaintiff out of said premises,

caused to be duly recorded in the office of the register of deeds for Rock county, Wisconsin, the said deed from said Robert Hall and the plaintiff to the said *John Nichols*, and suppressed and concealed or destroyed the said deed from said *John Nichols* to this plaintiff. And that said *John Nichols* has always, until said September 28, 1898, acknowledged said plaintiff to be the owner of said premises, and acted as the agent of this plaintiff in the care thereof, and until after September 28, 1898, never in any manner claimed to be the owner thereof, or any interest therein, and that neither of said defendants were the owners of any interest in said premises."

The defendants' answer sets forth that for many years *Nichols* had worked for Hall, and received little or no compensation other than his support. That in 1889 he was about to leave Beloit and engage in business elsewhere, when Hall requested him to remain, and agreed that if he would so remain and aid him in caring for his business affairs he would give him his business property, consisting of the property mentioned, reserving the income thereof for himself and plaintiff during their lives; that the deed of August 9, 1894, was executed pursuant to this agreement, and that *Nichols* had collected the rents, and, after paying insurance, taxes, and repairs, had paid the remainder to Hall and to plaintiff, until June, 1899, when, at the request of the plaintiff, the collection of the rent, etc., was turned over to her.

Upon the trial the court made findings sustaining the plaintiff's theory, and entered a judgment against defendants, from which they have taken this appeal.

*E. D. McGowan*, attorney, and *H. W. Chynoweth*, of counsel, for the appellants.

For the respondent there was a brief by *J. B. Dow* and *Smith & Pierce*, and oral argument by *Wm. Smith* and *C. E. Pierce*.

BARDEEN, J.   Unless the finding can be sustained that *Nichols* made a deed of the premises in suit to plaintiff and thereafter suppressed it, the plaintiff has no standing in court.   There is absolutely no evidence that *Nichols* procured the deed from Hall and wife by fraud, accident, or mistake.   In absence of a showing of such facts, the rule is universal that the grantor in a deed will not be permitted to prove that a deed absolute on its face was given in trust for his benefit.   *Fairchild v. Rasdall*, 9 Wis. 379; *Clarke v. McAuliffe*, 81 Wis. 104.   See *Kruschke v. Stefan*, 83 Wis. 373; *Krouskop v. Krouskop*, 95 Wis. 296.   The statute (sec. 2302, Stats. 1898) requires that a trust, other than those resulting by act or operation of law, shall only be created by deed or conveyance in writing subscribed by the party creating it, or by his duly authorized agent, whose authority shall be in writing.   There being no proof of the creation of any trust in the manner so pointed out, we are left to grapple with the question whether a deed was in fact executed and suppressed.   To reach a proper solution of this problem, we shall first consider the relations of the parties.

A way back in the year 1847 Hall took the defendant *Nichols*, then an infant but three years of age, into his family. During his minority he treated him as a son, and received from him the service of a child.   Hall was then a married man and had three children.   His wife and two of his children died.   In 1870 he married the plaintiff.   *Nichols* continued to live in the family after the second marriage, and until his own marriage, and one year afterwards, and was treated as a son.   He began in early youth working for Hall in the shoe business, and received little or no compensation beyond his support.   Afterwards he became a partner with Mr. Hall, and later, upon his retirement from business, he formed a partnership with Mr. Hall's son Robert.   The latter died in 1889, and *Nichols* thereafter ran the business himself.   After the son's death, Mr. Hall was in no active

business.   He continued to be on the best of terms with
*Nichols*, called him his "dear son," and stated that he had
done very much to help him accumulate his property.  This
was the situation of affairs when the deed to *Nichols* was
executed on August 9, 1894.  At that time Hall was seventy-
five years of age, and in somewhat feeble health.   The cir-
cumstances of the execution and delivery of this deed are
especially significant.  The deed was drawn under the direc-
tion of Mr. O. H. Orton, an attorney living at Beloit.  Mr.
Orton was produced as a witness, and detailed at length the
circumstances of the transaction.   He visited Mr. Hall at
his house, who gave him directions as to the preparation of
the deed.   He wanted a simple warranty deed, and stated
that all other matters with reference to the business were
understood between himself and *Nichols*, and that he had
the utmost confidence in his carrying out his wishes without
any writing on the subject; that *Nichols* understood that he
and his wife were to have the rents and profits of the prop-
erty during their lives.   He further told the witness that
*Nichols* had always been a faithful and worthy son, and
that they intended that he should have all the property after
they got through with it.   All they expected was the in-
come from it, and they trusted *Nichols* to give them the
profits of the property.  The witness further stated that only
the one deed was drawn, and that there was no talk or sug-
gestion that *Nichols* and wife were to deed this property to
*Mrs. Hall.*   Orton went to his office, caused the deed to be
drawn, and went back, had it executed, and took the ac-
knowledgment.  He took with him a Mr. Sandall to wit-
ness the deed, who was also produced as a witness.  To him
Mr. Hall stated that he was anxious to have the matter fixed
up because he wanted *Nichols* to have what he considered
to be his just due.   He had always been a good boy, and he
(Hall) had always looked upon him as a son, and now, as he
had no children of his own, all they cared for was the use

Fillingham vs. Nichols and wife.

of the property as long as they lived, and that they would trust him as to their securing the rents from it. This conversation was had in the presence of *Mrs. Hall,* who duly signed and acknowledged the execution of the deed. By Mr. Hall's direction, Orton took the deed to his office, and thereafter delivered it to *Nichols.* In the fall of that year Mr. Hall told Mr. Hayward, an old-time friend, that he had deeded a part of his property to *Nichols.* In the spring of 1895 he made a similar admission to another witness. There is also testimony from other witnesses along this same line made at later dates. These are undisputed facts in the case.

We have thus far purposely omitted reference to the testimony of defendant *Nichols.* He gave testimony strongly supporting his side of the case. He is, however, an interested party. Some of his testimony was clearly incompetent under the statute, as was also some of the testimony given by plaintiff, which covered transactions with the deceased. He is in direct dispute with a large number of witnesses who testified to admissions claimed to have been made by him regarding the title to the property, and concerning which we will have something to say hereafter. Both himself and *Mrs. Nichols* deny that they ever executed any deed to the plaintiff. No such deed was produced, and no witness was sworn who ever saw any such instrument, or who was willing to say that such a paper was ever drawn or ever had legal existence. Whether any such deed ever in fact existed is a pure matter of speculation. The trial court, by its sixth finding, says that about the time the deed to *Nichols* was executed he conveyed the premises in question to plaintiff, and that both deeds were placed in a drawer in his safe, with other papers of Hall's, and to which drawer Hall had a key. No one pretends that there is any direct testimony to support this finding. Such a finding seems to have been deemed necessary to support the theory of a delivery of the deed. Neither has the eleventh finding, regarding the con-

cealment and suppression of this deed, any direct evidence to support it.    Both findings rest upon inferences and deductions from the testimony, which are claimed to be of such probative force as to warrant the conclusion reached.    The plaintiff's case rested, first, upon declarations and statements of *Nichols;* second, upon declarations and statements of Hall; and, third, upon the conduct of the respective parties. With reference to the alleged admissions made by *Nichols,* they may be summarized by the statement that at different times, and especially after Mr. Hall's death, he stated in casual conversation with the different witnesses that Hall had deeded the stores to *Mrs. Hall,* or that she owned all the property and he was left nothing, and that he thought that Mr. Hall had been unfair to him.    With one or two exceptions, these statements were made to parties who had no interest in the controversy, and who were merely attempting to satisfy an idle curiosity.    In view of what this court has frequently said regarding this class of testimony, it is hardly necessary to do more than refer to the cases.    It is universally considered as the weakest kind of evidence that can be produced.    *Haven v. Markstrum,* 67 Wis. 493; *Emery v. State,* 101 Wis. 657.    The same is true of the alleged admissions of the deceased.    Moreover, the weight of such admissions is greatly lessened by the fact that proof was made of admissions by him that are directly contradictory.    It should be observed also that none of the admissions alleged to have been made by *Nichols* go to the fact of the existence of a deed.    They relate rather to admissions in derogation of his title, and not to the manner in which his title became divested.    Considering these alleged admissions by themselves, they are hardly sufficient to create a robust suspicion against him.    There are certainly some things in the conduct of *Nichols* to give color to the court's conclusion.    The transfer of the insurance on the stores to *Mrs. Hall,* the giving of the note by him to her when he held her unpaid note, and the

signing of the petition for street grading as agent, are circumstances of more or less cogency in support of that view. But are they, when grouped with the other facts in the case, of such convincing weight as to completely overturn a solemn deed and convict the defendant of a criminal fraud? We think not.

This is one of the class of cases where the proof should be of the clearest and most satisfactory character to warrant relief. The proof should be such as to establish the facts beyond reasonable controversy. There can be no relaxation from this rule without greatly disturbing the integrity of titles. The rule so often laid down in cases somewhat similar to this may be found noted in the following cases: *Harter v. Christoph,* 32 Wis. 245; *Lavassar v. Washburne,* 50 Wis. 200; *Meiswinkel v. St. Paul F. & M. Ins. Co.* 75 Wis. 147. To entitle the moving party to relief, the evidence must show something more than probabilities; more than mere appearance of truth. As has frequently been said, the facts proven should be of such positive character and of such convincing force as to point to the conclusion reached beyond reasonable controversy. Giving to the evidence of plaintiff its utmost probative force, it does not go beyond the realm of probability. That is not sufficient. We are met at the outset by a solemn instrument vesting title in *Nichols.* Added to this is the positive testimony of the circumstances under which it was drawn, and of the statements made by the grantor at the time, in absolute confirmation of the defendants' position. We have an utter failure of proof as to the existence of any deed executed by *Nichols.* The execution of such a deed would be of no avail without delivery. The plaintiff makes no claim that she ever supposed any such deed was ever in existence. At one time she went so far as to deny ever having executed the deed to *Nichols,* but she was forced to abandon that position. We cannot, within reasonable limits, refer to the multitudinous

circumstances relied upon by plaintiff to establish her case. We admit that there are many things shown hard to reconcile with the fact that *Nichols* was to remain the absolute owner of this property. We meet this, however, with the extreme probability that, if Hall intended this property should be conveyed to his wife, he would have had both deeds prepared at the same time. Why should he delay or postpone it? No explanation of any kind is offered. Again, if a deed had in fact been drawn and properly executed by *Nichols* and wife, it is strange that the witnesses or the officer taking the acknowledgment have not appeared. It may be that such a deed was executed, but we are unable to say so with that certainty the law requires. Hence, in obedience to our conviction and the mandate of the law, we are compelled to reverse the judgment of the trial court, and remand the case with directions to dismiss the action.

*By the Court.*— So ordered.