ILLINOIS STEEL COMPANY, Appellant, vs. KONKEL and another, Respondents.

*April 5—October 3, 1911.*

*Trusts and trustees: Express trust: Absolute deed how shown to be in trust: Evidence: Foreign wills: Power to sell land: Authority to execute in this state: Executors: Survivor: Ejectment: Recovery of undivided interest.*

1. A trust to take and hold the title to lands for the real owners as a convenience in conveying the same and to make conveyances at their direction, is an express trust under subd. 5, sec. 2081, Stats. (1898).
2. Under sec. 2302, Stats. (1898), a deed absolute on its face cannot be shown by oral evidence to have been made in trust.
3. To impeach such a deed and engraft upon it a trust, there must be clear and convincing evidence in writing establishing the fact beyond reasonable controversy.
4. The trust need not, necessarily, be embraced in one instrument, but whether in one or more it must be in such form as to comply with the statute (subd. 5, sec. 2081, Stats. 1898) without the aid of oral evidence.
5. A letter signed by the grantee in a deed absolute, stating that he has made a purchase of land of the grantor in such deed and that he takes the title in trust, but not describing the lands nor expressing the purpose of the trust or naming the beneficiaries, is not sufficient to meet the requirements of the statute; neither

is a resolution of the board of directors of a corporation in-
terested in such purchase, not signed by such grantee though
adopted while he was present, which fails to describe the land
or to name the parties for whose use the title was to be held.

6. Where a foreign will gives the executor power to sell and convey
real estate, a duly authenticated copy of the will and of the
probate thereof in the state of the testator's domicile, when re-
corded in this state in the office of the register of deeds of the
county where real estate of the testator is situated, is sufficient
to authorize the conveyance of such real estate without pro-
bating the will in this state, and is presumptive evidence of the
authority of the sole surviving executor to make such convey-
ance.

7. Under the statutes both of Michigan and of Wisconsin (sec. 2137,
Stats. 1898) a power of sale given by will to three executors.
can be rightfully executed by the sole surviving executor.

8. Under the statutes of this state relating to the action of eject-
ment, an undivided interest in the land may be recovered, al-
though suit be brought for the whole.

APPEAL from a judgment of the circuit court for Milwau-
kee county: JOHN K. PARISH, Judge. *Reversed.*

This is an action in ejectment brought to recover a portion
of blocks 190 and 195 in the Fifth (formerly Third) ward
of the city of Milwaukee. These blocks are part of fractional.
section 33, town 7 north, range 22 east. It was conceded on
the trial for the purposes of this case that on the 29th day of
June, 1869, and for some time prior thereto the Swedes Iron
Company was the owner in fee of the real estate in question.
The plaintiff to maintain its case put in evidence a deed dated
June 29, 1869, from the Swedes Iron Company to Eber B.
Ward of Detroit, Michigan, for and in consideration of
$15,000, which deed is absolute on its face and runs to Ward,
"party of the second part, his heirs and assigns forever."
The *habendum* clause provides:

"To have and to hold the same, together with all and singu-
lar, the appurtenances and privileges thereunto belonging or
in any wise thereunto appertaining, and all the estate, right,
title, interest and claim whatsoever of the party of the first.

part, either in law or equity, to the only proper use, benefit and behoof of said party of the second part, his heirs and assigns forever."

This deed was duly acknowledged and recorded in the office of the register of deeds for Milwaukee county July 27, 1869, in volume 113 of Deeds, pages 374 and 375. Plaintiff also put in evidence another warranty deed dated June 29, 1869, from the Swedes Iron Company to Eber B. Ward of the city of Detroit, Wayne county, Michigan, party of the second part, which deed recited a consideration of $20,000 in hand paid to the grantor by the second party, the receipt of which was confessed and acknowledged, and which deed conveyed to the party of the second part, Eber B. Ward, his heirs and assigns forever, the real estate described therein, and included property in Dodge and Milwaukee counties, Wisconsin. The *habendum* clause in this deed recites:

"To have and to hold the said above bargained premises with the hereditaments, privileges, appurtenances and improvements unto the said party of the second part, and to his heirs and assigns forever."

The testimony shows that these two deeds were executed and delivered simultaneously. There was also offered in evidence exemplified copy, Exhibit No. 85, which is a portion of the record of the probate court of Wayne county, Michigan, in the matter of the last will of Eber B. Ward, including his will, the seventh paragraph of which provides:

"All the rest and residue of my property, whether real, personal or mixed, or wherever the same may be situated, I order and direct that my executors hereinafter named shall sell and convey for the best price or prices so soon and as fast as practicable, regard being had to the times and probabilities that prices and payments will be better by short delays, but as soon as can be done to the best advantage in the judgment of my said executors, the same to be sold and converted into cash or interest-bearing bonds or mortgages until all of my said property (not specifically herein disposed of) shall be converted

into proper interest-bearing securities. . . . Lastly, I hereby appoint Orren W. Potter, of Chicago, Illinois, George H. Wyman, of Cleveland, Ohio, and Tubal C. Owen and Samuel R. Mumford, of Detroit, Michigan, executors of this my last will and testament."

The will of Ward is dated March 12, 1874, and it appears from the proceedings that he died in 1874; that the will was duly admitted to probate; that the execution of said will and administration of said estate was duly granted to the persons nominated as executors in the will, including Orren W. Potter. There was also put in evidence Exhibit No. 86, being deed dated November 15, 1878, from Orren W. Potter "as sole executor of the last will and testament of Eber B. Ward, deceased," to Samuel P. Burt, Matthew Keenan, and John H. Tweedy, "in their capacity as trustees of the bondholders of the Milwaukee Iron Co., and the North Chicago Rolling Mill Company, . . . in its own right." The deed conveys an undivided one-half to the said trustees, Burt, Keenan, and Tweedy, and the other undivided one-half to the said North Chicago Rolling Mill Company. It described blocks 190 and 195 in the Fifth ward of Milwaukee and other property.

Annexed to the deed and as part thereof, as recorded in the office of the register of deeds of Milwaukee county February 12, 1879, in volume 161, pages 96–108, are certified and exemplified copies of the records of the probate court and circuit courts of Wayne county, Michigan, "in the matter of the will of Eber B. Ward," including the will and all of the documents constituting part of plaintiff's Exhibit No. 85, together with certain others. Among these documents there is a certificate dated January 12, 1878, executed by the register of probate for Wayne county, certifying and describing Orren W. Potter as the sole surviving executor of the will of Eber B. Ward, deceased.

Exhibits Nos. 87, 88, 89, and 90, respectively, are declaration of trust by Samuel P. Burt, John H. Tweedy, and

Matthew Keenan to hold property in trust for the holders of certain bonds of the Milwaukee Iron Company, dated March 23, 1878, and recorded in the register's office of Milwaukee county; resignation of John H. Tweedy as trustee; appointment of Elisha L. Bennett and Richard C. Hannah as trustees to succeed John H. Tweedy and Samuel P. Burt, deceased; directions to said trustees to convey to the North Chicago Rolling Mill Company all property held in trust by them. Exhibit No. 88 is dated January 15, 1878; Exhibit No. 89 is dated May 13, 1885; Exhibit No. 90 is dated May 13, 1885, and the latter two were recorded. Exhibit No. 91 is deed of Matthew Keenan, Elisha L. Bennett, and Richard C. Hannah, as trustees, to North Chicago Rolling Mill Company, dated September 15, 1885, and conveys all right, title, and interest of the trustees in and to blocks 190 and 195, together with other property. Under this deed the North Chicago Rolling Mill Company acquired a half interest in blocks 190 and 195; theretofore, under Exhibit No. 86, it had acquired the other half interest. Exhibit No. 92 is act to incorporate the North Chicago Rolling Mill Company. Exhibits Nos. 93 to 100 inclusive are articles of incorporation of the Union Steel Company, proceedings of the stockholders of the North Chicago Rolling Mill Company and Union Steel Company as a corporation under the name of *Illinois Steel Company,* and articles of consolidation of said North Chicago Rolling Mill Company and Union Steel Company as the *Illinois Steel Company,* showing the incorporation of the plaintiff on May 2, 1889, and conveying to the *Illinois Steel Company* all the real estate, lots, leases, interests, trusts, estates, and effects, real, personal, and mixed, of every kind, name and nature, "wheresoever, howsoever, and by whomsoever held, belonging to or in anywise vested in the North Chicago Rolling Mill Company and the Union Steel Company."

Exhibit No. 140 is quitclaim deed by Catherine L. Cam-

eron, formerly Catherine L. Ward, widow of Eber B. Ward, deceased, to Samuel P. Burt, Matthew Keenan, and John H. Tweedy, as trustees, and to the North Chicago Rolling Mill Company. Said deed contains a reference to Exhibit No. 86, which is deed from Orren W. Potter, sole executor of Eber B. Ward's will, to the same grantees, and then conveys and quitclaims all right, title, and interest in and to all the real estate which is described in the deed from Orren W. Potter, as executor, to the same grantees. Said deed is dated January 18, 1879, and was duly recorded.

The respondents offered evidence, which was objected to and received under objection, tending to show that the conveyance to Ward was in trust. The principal item of this evidence, as appears from the record, is a letter from Ward to one Hagerman, as follows:

New Haven, June 13, 1869.

*J. J. Hagerman:*

DEAR SIR: I have made the purchase of the Swedes Iron company, but not just as we talked.

I pay for the whole.............. 535,000

Payable as follows:

Stock to Bushnell as per understanding .................. 100 $\left\{\begin{array}{l} 1/5 \\ 2/5 \\ 1/5 \end{array}\right.$

Stock to Bushnell and Ward jointly 110

Bonds of the Swedes Iron Co. to be $\left\{\right.$ In proportion of guaranteed by the mills...... 200 $\left.\right\}$ interest in pty.

Notes, E. B. Ward, trustee, 6, 8, 12 months, 8 per cent......... 125　　535,000

We take the works on the 1st of July. They to pay all contracts and debts up to July 1st. We assume the wood and coal contracts and the contract with Cubal and Stout for the run from and after July 1st. We to have all the wood, coal and other supplies on hand and the Swedes Company to keep the iron made up to July 1st.

Bushnell expects to place the 110,000 of stock amongst the Pacific R. Road men, which will be a first-rate arrangement.

The two attorneys, Van Dyke and their lawyer, will make out all the papers. I take the property as trustee. They

deed all the property and also deliver over all the stock to me as trustee.

I will be at Milwaukee before the 1st of July to sign the papers. Bushnell will be there next week, when he will sign the articles.

The profits of the blast furnace must be used to retire the notes I give, and by reducing the fuel we can pay off a considerable amount of that debit out of the furnace within the year.

I give Rolling Mill stock as collateral to the notes, I give the $125,000.

See Van Dyke and when the Company's lawyer comes they can make up the papers.

Resp., E. B. WARD.

Also a resolution, which was not signed by Ward, but, as appears from the minutes, he was present at the meeting at which said resolution was passed. The following is a material portion of the resolution:

"On motion of O. W. Potter, resolved, that so much of the property of the Swedes Iron Company as lies in the city of Milwaukee, and which is to be conveyed by it, in pursuance of the contract of even date herewith, and in the preceding resolutions referred to, be conveyed to E. B. Ward for greater convenience in making deeds thereof to purchasers as the same may be disposed of from time to time, for the parties entitled thereto under said contract, and that he, the said Eber B. Ward, be and hereby is authorized to receive such conveyance and until otherwise ordered to hold the title of that part of the property to be conveyed by said Swedes Iron Company, but the said E. B. Ward is in fact to hold such title in trust in the same proportions to the use and for the benefit of the same parties in the said contract named, and under the said contract thereto entitled, this resolution is made and adopted at the request of said E. B. Ward and as a declaration of such trust."

There was considerable oral evidence offered and admitted subject to objection which tends to show, among other things, that the title to the property was taken in the name of Ward as a matter of convenience in conveyancing, but that the beneficial interest was in the companies above referred to.

Hagerman testified, ":we expected to sell that property, and for convenience of conveying it we wanted it in the name of Captain Ward." And another reason was that in the transaction Ward obligated himself personally for $125,000, and the conveyance would, in a measure, serve to secure him until the obligation was paid by the three companies.

At the close of the evidence both parties moved for a directed verdict and the court directed a verdict for the defendants. Judgment was entered accordingly, from which this appeal was taken.

For the appellant there was a brief signed by *Theodore Kronshage, Jr.,* attorney, and *Kronshage, McGovern, Goff, Fritz & Hannan,* of counsel, and oral argument by *Mr. G. D. Van Dyke* and *Mr. Kronshage.* They argued, among other things, that there was no resulting or implied trust under the facts of the case. *Haaven v. Hoaas,* 60 Minn. 313. An express trust must be fully defined and clearly expressed upon the face of the instrument creating it, and it cannot be helped out by parol evidence, by writings foreign to each other, or by self-serving declarations of the *cestui que trust.* Browne, Stat. of Frauds, § 346*b; Cunha v. Gallery,* 18 L. R. A. N. S. 616; 2 Kent, Comm. 511; *Williams v. Morris,* 95 U. S. 444, 456; *Johnson v. Buck,* 35 N. J. Law, 338, 344; *Harney v. Burhans,* 91 Wis. 348; *Cook v. Barr,* 44 N. Y. 156; *Renz v. Stoll,* 94 Mich. 377; *Blodgett v. Hildreth,* 103 Mass. 484; *Martin v. Baird,* 175 Pa. St. 540; *Cornelison v. Roberts,* 107 Iowa, 220; *Dyer's Appeal,* 107 Pa. St. 446; *Brown v. First G. E. L. Church,* 198 Pa. St. 152; *Campbell v. Campbell,* 70 Wis. 311; Pomeroy, Eq. Jur. § 1007; Perry, Trusts, § 577; *Myers v. Myers,* 167 Ill. 52. The statute of Wisconsin is directed to the manner in which a trust is to be *created* and not merely to the manner in which it is to be *proved. Krouskop v. Krouskop,* 95 Wis. 296, 299; *Fillingham v. Nichols,* 108 Wis. 49, 52. As to the power of a foreign executor, or the surviving executor, to sell real estate in this state, they cited *Ford v. Ford,* 70 Wis. 19; *Clarke v. Clarke,*

178 U. S. 186; *Osborne v. Gordon,* 86 Wis. 92; *Crowley v. Hicks,* 72 Wis. 539; *Hayes v. Frey,* 54 Wis. 503; *Vernon v. Coville,* 54 Mich. 281; *Green v. Russell,* 103 Mich. 638; *Battelle v. Parks,* 2 Mich. 531.

For the respondents there was a brief by *Fiebing & Killilea,* attorneys, and *H. J. Killilea* and *Moritz Wittig,* of counsel, and oral argument by *Mr. H. J. Killilea* and *Mr. Wittig.* They contended, *inter alia,* that, Eber B. Ward having taken the title upon an active express trust, the title, under sec. 2090, Stats. (1898), vested on his death in the circuit court, where it still remains. The several writings offered in evidence for the purpose of establishing the trust should be construed together as a single instrument, and taken together they were sufficient to prove the existence and nature of the trust. *Hannig v. Mueller,* 82 Wis. 235; *Gates v. Paul,* 117 Wis. 170; *Thorp v. Mindeman,* 123 Wis. 149; *Blaha v. Borgman,* 142 Wis. 43; *Pratt v. Ayer,* 3 Pin. 236; *Schumacher v. Draeger,* 137 Wis. 618; *Ady v. Barnett,* 142 Wis. 18; *White v. Fitzgerald,* 19 Wis. 480; *Fadness v. Braunborg,* 73 Wis. 257; *Holmes v. Walter,* 118 Wis. 409. Parol evidence was admissible to show the whole contract, part only having been reduced to writing. *Mueller v. Cook,* 126 Wis. 504; *Agnew v. Baldwin,* 136 Wis. 263. The terms of the Ward will required at least a majority of the executors to join in conveying lands, and a deed by a foreign executor without compliance with secs. 3903, 3905, Stats. (1898), is void. *Ford v. Ford,* 70 Wis. 19; *Frame v. Thormann,* 102 Wis. 653; *Wells, Fargo & Co. v. Walsh,* 87 Wis. 67; *Disconto Gesellschaft v. Umbreit,* 127 Wis. 651; *Dibble v. Winter,* 247 Ill. 243, 93 N. E. 145; *Adkins v. Loucks,* 107 Wis. 587.

The following opinion was filed June 1, 1911:

KERWIN, J. The plaintiff claims the right to recover in this action upon legal title to the land in question from the Swedes Iron Company through Eber B. Ward and his ex-

ecutor, and also insists that, even though the deeds to Ward be in trust, still it is entitled to recover on several other grounds argued at length in the briefs of counsel for appellant; while on the part of the respondents it is claimed that the deeds to Ward were deeds in trust, and, Ward having failed to execute the trust during his lifetime, upon his death the title to the property passed to the circuit court under sec. 2094, Stats. (1898), which provides that upon the death of the surviving trustee of an express trust the trust then unexecuted shall vest in the circuit court, with the powers and duties of original trustees, and shall be executed by some person appointed under the direction of the court; therefore, it is argued, the plaintiff failed to prove title to the land or any right to recover in ejectment. Counsel for respondents also cites us to sec. 2090, Stats. (1898). As we have seen from the statement of facts, the deeds to Ward were absolute on their face, purporting to convey to him an absolute title, and the first question arising is whether the proof on the part of the respondents is sufficient to impeach the integrity of the title in Ward under absolute conveyances and establish that he simply received the property in trust. The trust claimed by counsel for respondents to have been established by the evidence is an express trust under subd. 5, sec. 2081, Stats. (1898). So upon the respondents' theory two questions are presented under this head: (1) Whether the deeds to Ward, absolute upon their face, can be shown by oral evidence to be in trust; and (2) Whether the evidence, conceding it to be competent, is sufficient to establish a trust under subd. 5, sec. 2081, Stats. (1898).

There is nothing whatever on the face of the deeds to Ward to indicate any purpose of a trust. On the contrary, the title is conveyed to Ward, his heirs and assigns, to have and to hold forever. It is unnecessary to cite authority in this state to the effect that in order to impeach a deed absolute on its face the testimony must be clear and convincing. As

said in *Fillingham v. Nichols,* 108 Wis. 49, 84 N. W. 15, "The proof should be such as to establish the facts beyond reasonable controversy. There can be no relaxation from this rule without greatly disturbing the integrity of titles." To the same effect is *Meiswinkel v. St. Paul F. & M. Ins. Co.* 75 Wis. 147, 153, 43 N. W. 669, and numerous other cases in this court. Moreover, our statute, sec. 2302, expressly provides that no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto, shall be created, granted, assigned, surrendered, or declared unless by act or operation of law or by deed or conveyance in writing, subscribed, etc. Under the foregoing statute and the decisions of this court it is well settled that a deed valid upon its face, conveying absolute title to the grantee named therein, cannot be shown by oral evidence to be in trust. *Topping v. Parish,* 96 Wis. 378, 71 N. W. 367; *Bird v. Morrison,* 12 Wis. 138; *Pavey v. Am. Ins. Co.* 56 Wis. 221, 13 N. W. 925. Now in the case before us the respondents have not only failed to establish by clear, convincing, and satisfactory evidence that the deeds to Ward were in trust, but they have practically failed to produce any competent evidence upon the point, and practically no evidence, competent or otherwise, that the absolute title to the property was not to go to Ward, as appears on the face of the deeds. They seek to establish the trust by certain evidence tending to show that the land was bought for or in connection with others, under negotiations with such others and Ward, from the Swedes Iron Company, but there is no competent evidence that the deeds to Ward were or were intended to be in trust. On the contrary, the evidence of Hagerman, even conceding it to be admissible, is to the effect that the intention was to take the property in the name of Ward for two reasons, viz.: (1) for convenience in conveyancing, and (2) because Ward obligated himself personally on the purchase for $125,000, and

the property would secure him in a measure until the obligation was paid; and the resolution set out in the statement of facts also refers to the deeds to Ward as being made for convenience in deeding the property; and by this resolution Ward was authorized to receive the conveyance and hold the title. True, this resolution states that Ward is to hold the property conveyed by the Swedes Iron Company in trust. This resolution or the record of it does not appear to have been signed by Ward, and no contract was produced signed by Ward declaring any trust. In the letter of Ward to Hagerman, also set out in the statement of facts, Ward speaks of taking the property in trust, but no real estate is described nor are the terms of any trust specified or defined. Parol evidence was admitted against objection to show that the subject matter of the purchase referred to in Ward's letter to Hagerman was the property of the Swedes Iron Company in Dodge and Milwaukee counties; that the mills referred to in the letter were Milwaukee Iron Company, North Chicago Rolling Mill Company, and Wyandotte Rolling Mill Company; that the latter company was to have one fifth and the former companies two fifths each. There was some other evidence, documentary and otherwise, produced, but which in no way impeached the integrity of the deeds to Ward through which the plaintiff claims title. The only attack made upon the plaintiff's chain of title is on the deeds dated June 29, 1869, from Swedes Iron Company to Ward, which deeds, it is claimed, were in trust for the use of the Milwaukee Iron Company, North Chicago Rolling Mill Company, and Wyandotte Rolling Mill Company, and further that the deed from Ward's executor is ineffectual for two reasons, viz.: (1) that on the death of Ward the title held by him vested in the circuit court, and (2) that one of several executors named in the will of Ward could not convey, especially without license from the county court of Milwaukee county.

The trust claimed to have been proved is an express trust

under subd. 5, sec. 2081, Stats. (1898).    Subd. 5 of this sec-
tion provides:

"For the beneficial interests of any person or persons, when
such trust is fully expressed and clearly defined upon, the
face of the instrument creating it, subject to the limitations
as to time and the exceptions thereto relating to literary and
charitable corporations prescribed in this title."

The record is barren of competent evidence showing com-
pliance with this statute.    There is no sufficient evidence
that any trust was declared by an instrument, much less that
the trust was fully expressed and clearly defined upon the
face of the instrument creating it.    True, the trust need not
necessarily be embraced in one instrument.    It may be made
up of several, but they must be so connected and in such form,
when construed together, as to comply with the statute with-
out the aid of oral evidence.

As we have seen, the resolution does not appear to have been
signed by Ward, but even assuming for the sake of the argu-
ment that the resolution and letter of Ward are competent evi-
dence, still they are not sufficient to meet the calls of the statute
with reference to definiteness.    It must be remembered that it
is sought by this evidence to ingraft upon a deed, absolute upon
its face, a trust, and this can only be done by clear and con-
vincing evidence in writing.    *Fairchild v. Rasdall,* 9 Wis.
379; *Campbell v. Campbell,* 70 Wis. 311, 35 N. W. 743;
*Krouskop v. Krouskop,* 95 Wis. 296, 70 N. W. 475; *Pavey
v. Am. Ins. Co.* 56 Wis. 221, 13 N. W. 925; *Clarke v. Mc-
Auliffe,* 81 Wis. 104, 51 N. W. 83.

Respecting clearness and definiteness, the evidence which
is required to establish an express trust under the statute is
well stated in *Dyer's Appeal,* 107 Pa. St. 446, and I cannot
do better than quote from that case:

"Do the two letters, taken together, constitute such a writ-
ing as will take the case out of the prohibition of the statute?
It must be conceded that they contain an admission of the

existence of *a* trust. But what trust? Who are the *cestuis que trustent?* . . . One of the letters speaks of selling the property and dividing the proceeds *pro rata*. But between whom? Just here is the pinch of the appellees' case. For it is in vain that we look to the letters for an answer to these questions. To obtain it we must go outside the letters and supply the omissions by oral testimony. The appellees refer with confidence to the partition to show that the trust is in favor of the heirs of Robert R. Ray; that the allotment to Robert Ray was double in value the share of the other heirs. But all this appears by oral testimony, and the facts which the master reports as agreed upon only meet a portion of the difficulty. There is nothing in the facts admitted to raise and define the trust. It is but necessary to read the report of the learned master to see that he was compelled to rely to a considerable extent upon oral testimony to reach his conclusions. And we can safely say that no decree could be made by a chancellor without such aid. It would be a decree composed of a species of judicial mosaic work, written evidence alternating with oral testimony. It needs but a moment's reflection to see that if we allow this we would seriously impair the act of 1856. This we are unwilling to do."

Ward's letter is relied upon as the strongest evidence going to establish an express trust, but a careful examination of it will show that it is not sufficiently definite and certain, even when read in the light of the facts and circumstances surrounding its execution, to impeach the integrity of the deeds. It does not indicate the lands in question as the subject of the trust without the aid of parol evidence; it does not show with fulness and certainty, as required by the statute, the purpose of the supposed trust. For what purpose convenience of conveyancing as stated does not appear. If the deeds were intended to be a trust, it is very singular that they should have been made in the form of absolute deeds. In fact the evidence tends to show that they were intended to be taken just as they were taken—absolute deeds,—and that the arrangement between the parties respecting the relation of the parties to the property was to be settled by an instrument or

instruments entirely independent of the deeds to Ward, so far at least as the Milwaukee property was concerned. The Ward letter does not sufficiently indicate with that certainty required by the statute who the beneficiaries were. It simply says, "I have made the purchase;" "We take the works;" "Stock to Bushnell;" "Bonds of the Swedes Iron Co. to be guaranteed by the mills; . . . in proportion of interest in pty." The letter does not indicate who "we" are, or what mills are meant. The trust must be established by writing alone. *Cook v. Barr,* 44 N. Y. 156; *Holmes v. Walter,* 118 Wis. 409, 95 N. W. 380; *Harney v. Burhans,* 91 Wis. 348, 64 N. W. 1031.

The other link in the chain of plaintiff's title attacked by respondents is the deed from Orren W. Potter, sole surviving executor of the will of Ward, to the North Chicago Rolling Mill Company and Burt and others as trustees, to each an undivided one-half interest. We have referred in the statement of facts to the paragraph in Ward's will authorizing a sale of the property. The will was probated in Michigan, where Ward lived at the time of his death. A duly authenticated copy of the will and probate thereof was recorded in the office of the register of deeds of Milwaukee county, Wisconsin. This was sufficient without probating the will in this state, and was presumptive evidence of the authority of Potter as sole surviving executor to convey the land under the power of sale contained in the will. Sec. 2295, Stats. (1898). The power of sale contained in the will was a valid power in trust and authorized the executor to convey the title. Secs. 2102, 2121, 2123, Stats. (1898); *Ford v. Ford,* 70 Wis. 19, 33 N. W. 188; *Crowley v. Hicks,* 72 Wis. 539, 40 N. W. 151.

It is further argued by respondents that since the power was given to three executors one could not execute it. But the statutes both in Wisconsin and Michigan provide that the sole surviving executor can rightfully execute the power. Sec. 2137, Stats. (1898); 2 Howell's Ann. Stats. Michigan, § 5628.

The fact that ejectment was brought for the whole property does not prevent judgment for a part. Sec. 3074, Stats. (1898), provides that no person can recover in an action of ejectment unless he has, at the time of commencing the action, a subsisting interest in the premises and a right to recover the same or to recover the possession thereof or of some share, interest, or portion thereof; and sec. 3077 provides that the complaint shall set forth that the plaintiff has "an estate or interest in the premises claimed, . . . and shall particularly state the nature and extent of such estate or interest." Other provisions of the statutes in ejectment clearly show that any share or interest may be recovered although suit be brought for the whole. *Wis. Cent. R. Co. v. Wis. River L. Co.* 71 Wis. 94, 36 N. W. 837; *Gunderson v. Cook,* 33 Wis. 551; *Tobey v. Secor,* 60 Wis. 310, 19 N. W. 99; *McGlone v. Prosser,* 21 Wis. 273.

The evidence shows that the plaintiff had at least an undivided interest in the property in dispute and was entitled to possession against all persons except its cotenant. *Hardy v. Johnson,* 1 Wall. 371; *Newman v. Virginia, T. & C. S. & I. Co.* 80 Fed. 228; *Dorlan v. Westervitch,* 140 Ala. 283, 37 South. 382; *Newman v. Bank of California,* 80 Cal. 368, 22 Pac. 261; *Robinson v. Roberts,* 31 Conn. 145; *Sowers v. Peterson,* 59 Tex. 216; *Hutchinson v. Chase,* 39 Me. 508; *Sherin v. Larson,* 28 Minn. 523, 11 N. W. 70; *Horner v. Ellis,* 75 Kan. 675, 90 Pac. 275; *Gilbert v. Auster,* 135 Wis. 581, 116 N. W. 177; *Kent v. Agard,* 24 Wis. 378.

The rule in this state, before changed by statute, doubtless was that in an action of ejectment, upon claim of the whole title, plaintiff could not recover an undivided part. *Allie v. Schmitz,* 17 Wis. 169; *Riehl v. Bingenheimer,* 28 Wis. 84. But the statute was altered by ch. 117, Laws of 1871, which change is embraced in sec. 3077, Stats. (1898), and under such change plaintiff, although claiming the whole, may recover an undivided interest.

Other questions discussed by appellant do not require treat-

ment.   It follows that, since no express trust was shown, the title passed to Ward and his executors.   Whether an implied, resulting, or constructive trust was shown is not involved in the case and we do not decide that question.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.

A motion for a rehearing was denied October 3, 1911.

For the respondents there was a brief by *Fiebing & Killilea*, attorneys, and *H. J. Killilea* and *Moritz Wittig*, of counsel, and oral argument by *Mr. H. J. Killilea* and *Mr. Wittig.*

