ILLINOIS STEEL COMPANY, Appellant, vs. BUDZISZ and wife, Respondents.

*January 13—May 1, 1914.*

*Adverse possession: Presumptions: Abandonment by lessee: Assignment of lease: Evidence: Baptismal records.*

1. Evidence which tended to show, among other things, that a lessee of premises, being involved in debt, suddenly left the state and never came back; that creditors who had loaned him $200, and who were not shown to have had any knowledge of the lease, thereupon took, for the debt, a house which the lessee had built, and thereafter claimed the premises as their own, inclosed them with a fence, made other improvements, and finally sold the property or part of it; and that they and their successors occupied the premises continuously for more than twenty years, is *held* to sustain a finding by the jury that the lessee had abandoned all claim to the property before the creditors entered thereon, and to rebut any presumption that they held under an assignment of the lease or were tenants of the lessor.

2. The continuous occupancy of the premises by said creditors and their successors for more than twenty years before the commencement of an action by the true owner, raised a presumption that their possession was adverse.

[3. Whether or not a church baptismal record was competent evidence of the date of a child's birth, not determined.]

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

The plaintiff sues in ejectment and claims through paper title. The defendants claim title by adverse possession for twenty years prior to June 30, 1897, the time of commencement of this action. The jury returned the following verdict:

"(1) Did Hering or Hering and wife enter upon and occupy the premises described in the complaint actually and continuously until they sold to Socha, under claim of title exclusive of any other right? *A.* Yes.

"(2) Did the successors of Hering to and including the defendants enter upon and actually and continuously occupy the premises until the commencement of this action, June 30, 1897, under claim of title exclusive of any other right? *A.* Yes.

"(3) If you answer the first and second questions 'Yes,' then answer: Were the said persons in the actual continued occupation of said premises under claim of title exclusive of any other right for a period of twenty years or more preceding the commencement of this action, June 30, 1897? *A.* Yes.

"(4) Did Michael Gruenewald occupy a portion of the premises under claim of title and exclusive of any other right during any of the time within twenty years before the commencement of this action, June 30, 1897? *A.* No.

"(5) If you answer question 3 'Yes,' then answer: Were said premises during the whole of said period of twenty years protected by a substantial inclosure? *A.* Yes.

"(6) If you answer question 3 'Yes,' then answer: Were said premises used by the several occupants during all of said time as an owner would ordinarily use the same? *A.* Yes.

"(7) Did William Thun abandon all claim that he had upon said premises before Hering entered into the possession thereof? *A.* Yes."

Judgment was entered for defendants on the verdict, from which this appeal was taken.

For the appellant there was a brief by *Theodore Kronshage, Jr., John H..Paul,* and *J. W. McMillan,* and oral argument by *Mr. Kronshage.*

For the respondents there was a brief by *Fiebing & Killilea, Henry J. Killilea,* and *Moritz Wittig,* attorneys, and *Moritz Wittig* and *Henry J. Killilea,* of counsel, and oral argument by *Mr. .Wittig.*

The following opinion was filed February 3, 1914:

KERWIN, J.   The chain of title through which the plaintiff claims has been considered by this court in former cases. *Ill. S. Co. v. Konkel,* 146 Wis. 556, 131 N. W. 842, and other cases in this court.   The plaintiff made proof of paper title and rested.   The defendants claimed by adverse possession under claim of title exclusive of any other right for a period of more than twenty years before the commencement of this action.

The findings of the jury established title in defendants, and the question here is whether such findings are supported by the evidence.   There is evidence that one Thun held possession under lease from the owner of the record title before Hering and wife took possession, and it is contended by counsel for appellant that the presumption is that the Herings held by assignment from Thun.   There would be great force in this contention if there was nothing in the case tending to rebut such presumption.   The defendants, for the purpose of rebutting this presumption, offered evidence tending to show that before the Herings took possession Thun abandoned the premises, and that the Herings immediately took and held possession in hostility to the owner.

It is strenuously urged, however, by counsel for appellant that the evidence shows that possession was given by Thun, a lessee of appellant's predecessor in title, to the Herings and Gruenewalds, therefore the law presumes an assignment of

the leasehold from the fact of entry and occupation on the part of the Herings and Gruenewalds, and that such presumption is conclusive upon the defendants for the reason that the record contains no evidence tending to rebut it.    But there is evidence that Hering claimed the property as his own during the time he lived upon it; that he inclosed the premises with a fence and made some improvements thereon, and sold the property, or some of it, to his successor in possession. Moreover, there is evidence to support the finding of the jury that Thun abandoned all claim to the property before Hering entered into possession.    In regard to this question the court charged the jury: "To abandon the land the owner must leave it over to the next comer, whoever he may be, without any intention to return or repossess or reclaim it for himself in any event and regardless and indifferent to what may become of it in the future."    In answer to a question as to why Thun left the witness said: "He borrowed some money from Mr. Hering and he also had debts in different stores, and that is why he ran away."    In answer to another question as to how Thun left the witness answered: "He left all in a sudden and he left lots of debts, did not pay his debts, and disappeared."    There is also evidence that Thun left the city and never came back; that he left the state.    In answer to a question as to how the house was bought from Thun, Mrs. Hering testified: "We loaned him $200 and he left and we took the house for the $200."    One Sharping also testified that Thun sold the barn on the premises to one Grattschalk and moved away.    There is other evidence corroborating the testimony referred to as to the abandonment of the premises.    There is no evidence in the record that the Herings had any knowledge of the tenancy of Thun, or that Thun assigned his lease to the Herings or Gruenewalds.

While the evidence tending to establish abandonment is not strong, we are inclined to think that it is sufficient to support the verdict.    The contention of appellant that there was no abandonment is based upon the theory that the Herings en-

tered as assignees of Thun, therefore held under the true
owner and became tenants of such owner.    But since the
Herings had no knowledge of the tenancy of Thun it is diffi-
cult to see how they could be made tenants by mere presump-
tion.    Upon the established facts in the case the presump-
tion, so far as any exists, would seem to be that the Herings
held adversely.    They and their successors in occupancy, in-
cluding the defendants, occupied the premises for more than
twenty years continuously before the commencement of the
action.    Such occupancy raises a presumption of adverse pos-
session.    Secs. 4207, 4210, Stats.    *Ill. S. Co. v. Budzisz,* 106
Wis. 499, 82 N. W. 534; *Pitman v. Hill,* 117 Wis. 318, 94
N. W. 40; *Wollman v. Ruehle,* 104 Wis. 603, 80 N. W. 919;
*Ill. S. Co. v. Paczocha,* 139 Wis. 23, 119 N. W. 550; *Ill. S.
Co. v. Budzisz,* 139 Wis. 281, 119 N. W. 935, 121 N. W.
362; *Ovig v. Morrison,* 142 Wis. 243, 125 N. W. 449.    The
foregoing cases in this court show clearly that upon the evi-
dence and findings of the jury the premises were occupied by
the Herings and their successors adversely.

But it is contended by counsel for appellant that the evi-
dence does not show entry and occupancy by the Herings
prior to June 30, 1877, that is, twenty years before the com-
mencement of this action.    Counsel discuss the evidence at
length and urge that the evidence of defendants' witnesses is
so vague and uncertain as to whether or not the Herings oc-
cupied the premises in dispute prior to June 30, 1877, that
it should not have been submitted to the jury.    Counsel for
defendants also discuss the evidence and quote a large part of
it on this point in their brief.

We have carefully examined the evidence and are satisfied
that the finding of the jury on the question is supported by
the evidence.    It would serve no useful purpose to review it
or quote from it in this opinion.

It is further urged by counsel for appellant that the court
erred in submitting the fourth question of the special verdict

to the jury and in charging the jury on that question. The fourth question involves the occupancy by the Gruenewalds. Counsel claims that there is no evidence from which it can be inferred that there was any privity between Gruenewald and Hering or any of the latter's successors, hence the fourth question should not have been submitted to the jury. An examination of the charge upon this question satisfies us that there is no prejudicial error in it, if there was sufficient evidence to warrant the court in submitting the question to the jury. We are inclined to think that the evidence is sufficient to support the answer of the jury to the fourth question either on the ground that the shanty or barn in which the Gruenewalds lived was not on the premises in question, or that the Gruenewalds were occupying by permission of the Herings and not adversely to them. There is evidence to the effect that the barn or shanty where the Gruenewalds lived was fifty feet distant from the Herings' house; that the Gruenewalds made no claim to the premises occupied by them; that they moved away before the Herings did. Mrs. Gruenewald testified that she never heard her husband say anything about claiming anything, that he never said he claimed land or house or anything else. Michael Gruenewald testified that he did nothing with the shanty, only let it stand and went about his business; that Hering took it and sold it. "He sold his house and mine." There is other evidence in the record tending to show that Gruenewald was not holding adversely but by permission from Hering.

Counsel for appellant further claim error in refusal to admit in evidence church records relative to the birth and baptism of the children of Michael Gruenewald. The court held the records admissible for the purpose of showing the date of baptism and of the fact that Mrs. Hering and Mrs. Schoenemann were witnesses who stood up for the infant child, who was baptized at that date, but held that the records were not evidence of the date of the birth. Whether there

was any error in the ruling in this regard we shall not consider because we are satisfied that even if the ruling was erroneous it was not prejudicial to the appellant.

We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.

A motion for a rehearing was denied, with $25 costs, on May 1, 1914.