BADGER FURNITURE COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Appellants.

*October 11—November 5, 1929.*

For the appellants there was a brief by the *Attorney General* and *Mortimer Levitan* and *Suel O. Arnold,* assistant attorneys general, attorneys for the Industrial Commission, and *Olin & Butler* of Madison, attorneys for Julia Eva Brisbane, and oral argument by *Mr. Levitan* and *Mr. Clifford G. Mathys* of Madison.

For the respondents there was a brief by *Richmond, Jackman, Wilkie & Toebaas,* and oral argument by *Mr. Ralph W. Jackman* and *Mr. F. Halsey Kraege,* all of Madison.

CROWNHART, J. John Brisbane, under contract with the Badger Furniture Company to sell its furniture on commission, was accidentally killed in a collision between his automobile and an engine on the railroad track, near Sun Prairie, Dane county, December 8, 1927. His widow, Julia Brisbane, one of the defendants and appellants, made a claim before the Industrial Commission for compensation under the compensation act. The commission held a hearing and made its findings of fact and awarded compensation to the

claimant. The plaintiffs, Badger Furniture Company and its insurance carrier, brought an action in the circuit court to review the award of the Industrial Commission. The circuit court set aside the award, and the Industrial Commission appealed from the judgment of the circuit court.

The facts are not in dispute, nor are the inferences therefrom in doubt. Mr. Brisbane was a commercial salesman. He contracted with the Badger Furniture Company in February or early March, 1927, to sell furniture for said company on a straight commission basis. He was to pay his own expenses, and had no drawing account. He was at liberty to sell in Wisconsin, at any place or time, in his own discretion. He furnished his own car. He made no daily report to his company. The contract was subsequently modified to give certain territory in the northeastern part of the state to another agent; otherwise the contract was the same at the time of his death as when first made. The appellants contend that from the course of conduct between the parties during the period that Brisbane acted under the contract, the Badger Furniture Company exercised such control and direction over Brisbane as to make him an employee rather than an independent contractor.

In *Miller & Rose v. Rich,* 195 Wis. 468, 218 N. W. 716, we discussed the meaning of the terms "employee" and "independent contractor" as those terms are used in the compensation act. We there held that:

"The employee generally is subject to direction and control by the employer as to his work and the manner of execution. The independent contractor undertakes to do the job reserving to himself independence of action as to execution, except as designated in the contract. There may be cases where definition is difficult, but application of the principles to the facts is usually fairly plain."

Whether or not a person is an independent contractor or a servant depends upon the right of control by the principal

over the person engaged to do the work. The mere fact that the principal exercises such control is not significant if he has no right of control. The test is to be determined by the contract, not by the course of conduct. However, when the terms of the contract are in doubt, the course of conduct of the parties in the execution of the contract may be considered as an aid in construing the contract, but when the contract is determined, the right of control by the principal over the person doing the work is generally considered the important test. Note 19 Ann. Cas. 3; 14 Ruling Case Law, p. 67; *Madix v. Hochgreve B. Co.* 154 Wis. 448, 143 N. W. 189; *James v. Tobin-Sutton Co.* 182 Wis. 36, 195 N. W. 848; *Machae v. Fellenz C. & D. Co.* 183 Wis. 44, 197 N. W. 198; *Ronning v. Industrial Comm.* 185 Wis. 384, 200 N. W. 652; *Buchholz v. Breitbach,* 193 Wis. 224, 213 N. W. 329; *C. R. Meyer & Sons Co. v. Grady,* 194 Wis. 615, 217 N. W. 408; *Miller & Rose v. Rich,* 195 Wis. 468, 218 N. W. 716; *Kneeland-McLurg L. Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199; *Medford L. Co. v. Industrial Comm.* 197 Wis. 35, 221 N. W. 390.

In reaching a conclusion, of course there are other things to be considered besides the question of control, to wit: the nature of the business or occupation; which party furnishes the instrumentalities and tools; the place of work; the time of employment; the method of payment, and the intent of the parties to the contract. In this case the contract was oral, and we have only the testimony of one party to the contract; hence it is important to consider the course of conduct of the parties to determine the control actually exercised by the Badger Furniture Company in construing the contract. Brisbane worked for the Badger Furniture Company from the date of the contract until the time of his death, a period of nine months, and during that time the only evidence to indicate that the respondent had exercised any control over Brisbane is shown by four letters from the Badger Furniture

Company to Brisbane. One under date of March 22, 1927, contains the following:

". . . The writer gave you a list of the towns he made two weeks ago and most of them have only one dealer in a town and in Madison the writer only called on the Imperial Housefurnishing Company. If the roads are in fair condition through the southeastern part of the state, it would be well to work from Kenosha over to Beloit, and go as far as Evansville, Albany, Monticello, and back to Madison. This section as a rule is always good, especially at this time of the year, and if road conditions improve you could then take on the northern section and hope you will be able to book some business in the smaller towns.

"During the past week the writer was in Milwaukee and some of the correspondence was neglected, but hope you will pardon us and assure you we will do our utmost to get out the new samples and price list as soon as possible."

There is here no suggestion of control in the above letter to modify in any way the oral contract.

One, under date of November 5, 1927, has this to say:

"Since you called at the Imperial Furniture Company on September 25th we have written them calling special attention to their two items of November, 1926, which we are very anxious to get cleaned up, but it seems it is impossible for us to get any action.

"We wish that you would call on them, not with a view of collecting but just to get this antique balance cleaned up. Just get check for $40.17 so that we can check off these old items and eliminate any further correspondence regarding them.

"Part of the balance of the account is past due and should be taken care of."

This letter simply requests an accommodation service from the deceased, such as any one under the circumstances would naturally perform as an incident of his work.

Another letter of the same date is as follows:

"Please call on E. J. Kramer, Highland, Wisconsin, imme-

diately because he wrote to the factory that he has a prospective customer for upholstered living-room suite.

"Kindly give above your immediate attention, and oblige."

This letter is plainly a suggestion for the mutual benefit of both parties.

The claimant, Julia Brisbane, testified that she overheard her husband telephoning at various times to the Badger Furniture Company, and that she understood he received over the phone directions to go to certain places from time to time. Of course she did not hear all the conversation, and her testimony in that regard is rather unimportant.

It is clear from these letters that the Badger Furniture Company did not attempt to exercise control over the deceased, but that it gave him from time to time advice of mutual concern.

It is claimed that deceased was on his way to Lake Geneva on business for the company when he was fatally injured. The explanation of that trip is given in two letters in evidence. A letter from a customer there says that he had lost the address of deceased, and writes the Furniture Company to have Brisbane call with reference to future business. The company forwarded that letter to Brisbane, and with it wrote him as follows:

"Inclosed you will find copy of correspondence to Wightman & Smith, Lake Geneva, Wisconsin, who would like to see you before December 20th, and would suggest that you get into communication with this firm immediately."

Deceased wrote the party at Lake Geneva, in reply.

"Answering your letter to Badger Furniture Company, please be advised that I expect to be in Lake Geneva this Friday morning, and trust you can have some prospects lined up for me. Don't forget our overstuffed,. as we have some fine new numbers and covers at prices that are right."

So it clearly appears from the correspondence that deceased, while on his way to Lake Geneva, was on his own business, according to his own arrangements.

The testimony is undisputed that deceased furnished his own car in traveling from place to place; that he paid his own expenses, and his compensation was based only upon commission on sales he made. Further, it appears without dispute that he was at liberty to take on other lines of goods, and that during a portion of the time, at least, he did have other lines of goods, and that he did represent other independent concerns in selling other lines of goods. He therefore furnished his own instrumentalities for doing his work, and his place of work was wholly away from the location of the Badger Furniture Company, and where the Furniture Company could exercise but little supervision or control if it chose to do so. It is likewise clear that the parties themselves did not intend to create the relation of employer and employee. At the time the contract was entered into it was understood that deceased would handle other lines of goods, representing other parties as well as the Furniture Company, and that he was to have extensive territory, which he could cover at his own discretion and in his own way. Naturally, deceased expected that the Furniture Company would co-operate with him in making sales and building up his business, and, naturally, the Furniture Company expected to co-operate with deceased and assist him in promoting his sales, and the letters heretofore quoted indicate that it did co-operate with him, and that deceased in turn co-operated with the company. This was a mutual arrangement that was contemplated by the contract, but there is no evidence of the relation of employer and employee under the compensation act, when considered in connection with the other evidence in the case.

It follows that the judgment of the circuit court must be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.