HABRICH and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Respondents.

*November 8—December 3, 1929.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan*.

OWEN, J. On the 2d day of June, 1927, one Walter Bent, while in the service of Joe Habrich, sustained injuries while blasting, resulting in his death. The Industrial Commission made an award in favor of his widow, Etta Bent, under the provisions of the workmen's compensation act, and this action was brought to set aside the award. That

at the time of the accident the deceased was performing services for Joe Habrich, the plaintiff, is conceded. But the disputed question, and the question involved upon this appeal, is whether he was rendering such services as an employee or as an independent contractor.

It appears that Forest Lake, Inc., owned the land surrounding Forest Lake, in Vilas county, Wisconsin, which had been platted into shore lots. Joe Habrich, the plaintiff, was general manager of Forest Lake, Inc. He entered into a contract with Forest Lake, Inc., to build a road around the lake, and three roads leading from this main road to the shore of the lake at specified points. He sublet the contract of building the main road to Walter Bent, who was a contractor and was equipped with heavy machinery necessary for the building of roads through timber country. Habrich undertook to build the branch roads himself. This was in the summer of 1926. Bent proceeded with the construction of the main road and Habrich with the construction of the branch roads. Habrich did not complete the construction of the branch roads during the season of 1926. He did not have the machinery and equipment necessary to perform the heavy work encountered in the construction of these roads. Bent had a crew of men and the equipment necessary to do this heavy work. Habrich arranged with Bent for the use of his crew and caterpillar tractor for the completion of these branch roads. The arrangement was casual and informal. According to Habrich's testimony, he "asked Bent if he would go in with his men and machinery and finish these branch roads for him. It was not necessary for me to have any supervision as to how it was built, because he was considered a better man than I was, as far as the actual building goes. It wasn't I knew that he was an expert in building roads that I wanted him to go in and build the roads; it was because he was there with his equipment. He was actually in control and supervised the

work. That was because I felt that he knew more about building roads than I did. That was my only reason. As far as paying Mr. Bent for the men, I don't think anything was said. In other words, the wages are about the same up there and I understood them to be $4 a day for the men; $8 that is what everybody charged for a team and driver, and the Holt (tractor) was supposed to be $35 with two men, and I think he told me the plows and scrapers, well, about a dollar a day for the use of them. And so with that understanding Mr. Bent went in to work on the side roads. I believe it was within my power to discharge him and his crew any day I wanted to and hire somebody else. In my own mind I thought I was the boss. I felt I had a right to discharge them at any time. While he was building the point roads I went in there and gave orders as to what I wanted done by the men. During the spring of 1927 I went out there when Mr. Bent wasn't there, when he was not on the job, and gave orders to the crew as to what to do, and I felt I was within my rights. In my mind I was paying these men for their work by the day." He further testified directly that Bent was working for him. This work had been going on about ten days when the accident resulting in the death of Bent occurred. After the death of Bent, Habrich paid the men whom Bent had brought onto the job in accordance with their time as furnished by Mrs. Bent. At the time of the hearing he had not settled with Mrs. Bent or with the estate of Walter Bent for the reason that there was an unadjusted balance between them carried over from the operations of the previous year, and no agreement had been reached between them concerning the amount which Habrich was owing to the estate of Walter Bent.

It appears that it had been customary for Habrich to keep an individual account of the time of the men whom he had personally employed in constructing these branch roads. The time of the men whom Bent brought onto the job was

not thus kept. Their time was kept by Bent. This custom had originated during the year 1926 when Bent had rendered similar service to Habrich. Bent would render Habrich a bill for the amount coming to himself as well as the men. Habrich would give Bent a check to cover the amount and Bent would pay the men. However, during the season of 1927 no payment had been made to Bent for himself nor for the men, but, as stated, after the death of Bent, Habrich settled with the men. Habrich testified that he paid them because, in the first place, he wanted to be sure that they were paid, and in the second place, that it was proper for him to pay them. "If Bent was not dead, might be he would pay them or I would pay it."

The question is whether this testimony compels the conclusion that Bent was rendering these services in the capacity of an independent contractor. The test to be applied in determining whether one rendering services for another is an employee or an independent contractor has recently received such frequent consideration by this court that it seems unnecessary to dwell at length thereon at this time. The question was fully considered and our cases cited and reviewed in *Badger Furniture Co. v. Industrial Comm., ante,* p. 127, 227 N. W. 288. The principal test is whether the employer has the right of control with reference to the details of the work. This is the dominant test, although there are other things to be considered, such as the place of the work, the time of the employment, the method of payment, and the right of summary discharge of employees. It has been said that the status of an independent contractor is the more readily inferable where the contract calls for the performance of an entire piece of work at a specified price. This latter condition is probably necessary in popular understanding in order to give rise to the status of an independent contractor. While it is not indispensable in law, it is not without its influence in a determination of the question.

Note, 65 L. R. A. 461, and cases there cited. We see very little in this evidence to indicate that Bent was an independent contractor. He was on the job to do whatever Habrich told him to do. He was not there to complete any certain piece of work. He was not there to work any given length of time. He had no control over the details of the work which it was not within the power of Habrich to veto. That was evidently the understanding of Habrich, and we discover nothing in the oral testimony relating to what this contract was that seems to deprive Habrich of that power. Habrich did not exercise it because he did not deem it necessary. He felt that Bent knew more about the work than he did and he had confidence in him. The question is not, however, whether he exercised it but whether he had the right to exercise it. Habrich says he thought he had that right, and it seems clear to us that there was nothing in the contract which deprived him of the right. We discover no reason for disturbing the conclusion of the Industrial Commission that at the time of the accident Bent was an employee of Habrich.

It is contended, however, that there was no competent evidence before the commission by which it could determine whether Bent was an employee or an independent contractor. It is contended that Habrich's testimony was incompetent under the provisions of sec. 325.16, Stats., which provides:

"No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person, or in any action or proceeding in which such insane person is a party . . . unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, and then only in respect to

such transaction or communication of which testimony is so given, or in respect to matters to which such testimony relates."

It will be noticed that this statute prohibits a party from giving testimony in *his own behalf or interest*. The testimony of Habrich was not given in his own interest. It was given upon his examination as an adverse party. It has never been understood that this statute prohibited the examination of an adverse party against his interest. 4 Jones, Evidence, pp. 624, 631; *McLaughlin v. Webster,* 141 N. Y. 76, 35 N. E. 1081; *Tabor v. Tabor,* 136 Mich. 255, 99 N. W. 4.

Furthermore, we hold that where the facts disclosed show that one is injured while in the service of another, for the purposes of the compensation act it will be presumed that the person injured was an employee, and that the burden of proving otherwise rests upon the one seeking to defeat compensation. The workmen's compensation act is a beneficent law enacted for a beneficent purpose. The accomplishment of that purpose is not promoted by imposing upon the dependents of one who has come to his death in the service of his employer the burden of proving the exact terms of the contract under which the services were performed. In cases such as this, the favorite of the law might well become the victim of a rule of evidence. Such a result would illy comport with the purposes of the workmen's compensation act. The law should be consistent. It should not offer compensation with one hand and withdraw it with the other. When the inquiry has proceeded to the point where it appears that a workman has been injured while rendering service for his employer, let it be presumed that he rendered such service in the character of an employee and let the burden of proving otherwise rest upon the one who would defeat the right to compensation. We find it stated in a note in 65 L. R. A.

459, that the weight of authority supports this presumption in tort actions. We have not examined the authorities referred to in the note because, whether or not such be the presumption in tort actions, they would not be controlling here. Whatever the rule in such actions, we think the presumption should be as stated in claims for compensation under the workmen's compensation act.

*By the Court.*—Judgment affirmed.