KRUSE (ANNA), Appellant, vs. WEIGAND and another, Respondents.

*February 12—March 10, 1931.*

For the appellant there were briefs by *Alexander Wiley* and *Robert L. Wiley,* both of Chippewa Falls, and oral argument by *Alexander Wiley.*

*Roy P. Wilcox* of Eau Claire, for the respondents.

NELSON, J.   The plaintiff contends that the court erred in denying plaintiff's motion for judgment and in changing the answer of the jury to question No. 6 as to said Wilcox from "Yes" to "No" and in granting defendant Weigand's motion for judgment on the verdict as so amended, dismissing the complaint and action upon the merits as to him, for the reason that there was credible evidence to support the verdict as rendered, and it should therefore stand.   *Buchholz v. Breitbach,* 193 Wis. 224, 213 N. W. 329.

The errors assigned raise but a single question: Was Wilcox, at the time of the action, an independent contractor or was he an employee of Weigand, acting as such within the scope of his employment?   Upon the answer to this question depends our decision.   This court has, in several well considered cases, carefully pointed out the difference between a relationship of master and servant and one of employer and independent contractor.   *Madix v. Hochgreve B. Co.* 154 Wis. 448, 452, 143 N. W. 189; *James v. Tobin-Sutton Co.* 182 Wis. 36, 39, 195 N. W. 848; *Buchholz v. Breitbach,* 193 Wis. 224, 213 N. W. 329; *Badger F. Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288; *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194. Both a servant and an independent contractor, engaged in

performing services for another, may, in a sense, be considered agents of the master, or of the employer of the independent contractor. As to the act of a servant acting for his master and within the scope of his authority, the master is liable, while as to the acts of an independent contractor the employer is not liable. This is elementary and needs no citation of authority. Whether a person is a servant of another or an independent contractor depends, in large measure and almost always, upon the degree or power of control which the employer has retained as to the manner in which the details of the work are to be carried out or performed. In *Madix v. Hochgreve B. Co.* 154 Wis. 448, 451, 143 N. W. 189, it was said:

"The most significant indicium of an independent contractor, however, is his right to control the details of the work. . . . If such right remains in the employer, whether exercised or not, the relation will be held, in the absence of other controlling circumstances, to be that of master and servant or principal and agent, and not of employer and independent contractor."

In *James v. Tobin-Sutton Co.* 182 Wis. 36, 195 N. W. 848, a case very similar in most respects with the case at bar, this court gave its rather unqualified approval of the following definition of an independent contractor as "the most accurate basic definition that can be given:"

"An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed."

In *Miller & Rose v. Rich,* 195 Wis. 468, 218 N. W. 716, the meaning of the terms "employee" and "independent contractor" was discussed, and it was said (p. 470):

"The employee generally is subject to direction and control by the employer as to his work and the manner of execution. The independent contractor undertakes to do the

job reserving to himself independence of action as to execution, except as designated in the contract. There may be cases where definition is difficult, but application of the principles to the facts is usually fairly plain."

In *Badger F. Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288, it was held (p. 129) :

"Whether or not a person is an independent contractor or a servant depends upon the right of control by the principal over the person engaged to do the work. The mere fact that the principal exercises such control is not significant if he has no right of control. The test is to be determined by the contract, not by the course of conduct. However, when the terms of the contract are in doubt, the course of conduct of the parties in the execution of the contract may be considered as an aid in construing the contract, but when the contract is determined, the right of control by the principal over the person doing the work is generally considered the important test. (Citing many cases.) In reaching a conclusion, of course there are other things to be considered besides the question of control, to wit : the nature of the business or occupation; which party furnishes the instrumentalities and tools; the place of work; the time of employment; the method of payment, and the intent of the parties to the contract."

At the expense of brevity, which is greatly to be desired in judicial opinions, we have quoted from several opinions of this court dealing with independent contractors to the end that these well established principles may now be applied to the facts of this case. There is not the slightest dispute as to the contract arrangement with Weigand under which Wilcox worked. Defendant Weigand had been handling Nash cars for many years. He had an agency in Chippewa Falls, an office and garage in Eau Claire, and sub-dealers in other places. The automobile business was his own. Defendant Wilcox came to him in the fall of 1928 and asked for a job of trying to sell Nash cars. Weigand inquired what Wilcox was then doing and was told

that he had a farm out in the country. Weigand told him that if he would buy a Nash car and use it as a demonstrator and try to sell cars he would give him seven per cent. commission on the cash that was brought in on such sales as were accepted, and also allow him $20 a month for gas, oil, and maintenance of his car. Weigand told him that he could come and go as he pleased. He was not required to report at the office at any particular time. He received no salary. Wilcox purchased a car and started trying to sell cars. Weigand, from time to time, gave him the names of prospects whom Wilcox called on as he conveniently saw fit. Wilcox obtained the names of certain prospects through his own efforts. Wilcox was permitted to sell cars in Eau Claire and Chippewa Falls and in other cities and villages where there were no dealers. In making sales Weigand had no control over Wilcox as to where he went, or when he went, or what he did to promote or bring about a sale. Weigand did not command him where to go, or when to go, or attempt to control the amount of time to be spent by Wilcox in trying to sell cars. The details of selling cars, meeting with and soliciting prospects, were all under the control of Wilcox, who could and did pursue his work when and as he saw fit. Wilcox was under no obligation to go anywhere pursuant to directions from Weigand. Wilcox was wholly free under the arrangement to work when and where and as much or little as he pleased so far as the details of selling cars were concerned. When he sold a car he received the seven per cent. commission. Whenever a second-hand car was to be taken in on a deal Weigand had the right to determine the amount of the credit to be given for such used car. Whenever credit or part credit was to be extended it had to be approved by Weigand. The foregoing statement of the contract arrangement and the execution thereof is nowise in dispute.

There is no doubt that the relationship which existed between Weigand and Wilcox was that of employer and independent contractor. Weigand clearly had no right to control Wilcox as to the details of selling cars. The fact that at different times Weigand gave Wilcox names of prospects whom he expected Wilcox would call on; that he passed upon credit customers; that he reserved the right to pass upon the amounts to be allowed on trade-in cars, has no significant bearing upon the clear-cut and well-defined arrangement existing between Weigand and Wilcox. Clearly Weigand did not furnish the instrumentality—the car—to be used by Wilcox in promoting or effecting sales. Wilcox did not work in any particular place. He was free to work where and when he pleased. The nature of the business of selling cars was such as is quite generally performed by persons working as independent contractors. The method of payment which existed is consistent with the theory that Wilcox was an independent contractor. He received no salary. Weigand knew the difference between an independent contractor and a servant or employee and generally had in his employ three independent contractor salesmen and two regular salaried salesmen.

The facts of the case are in all material respects like those involved in *James v. Tobin-Sutton Co., supra,* in which selling automobiles was involved, and *Badger F. Co. v. Industrial Comm., supra,* in which the sale of furniture was involved. The case at bar is clearly ruled by these decisions.

The plaintiff contends, however, that at the time of the accident and on that particular trip Wilcox was in fact the agent (servant) of defendant Weigand. This contention is based upon the facts: first, that the Wilcox car bore garage license numbers issued to Weigand; second, that Wilcox was transporting Woodard, a prospective purchaser of a car, to Eau Claire; and third, that defendant Weigand made certain admissions after the accident which justified

the inference that Wilcox was out on company business and that Wilcox was his agent and that the Nash car was a company car.

It is, of course, the law that a car bearing certain license numbers is presumed to be owned by the person to whom the license number is issued and to be driven by the owner thereof or his servant. This presumption, however, is rebuttable. *Enea v. Pfister,* 180 Wis. 329, 192 N. W. 1018; *Buchholz v. Breitbach,* 193 Wis. 224, 213 N. W. 329. It was shown in this case, by the undisputed evidence of Weigand and Wilcox, fortified by documents, the impeachment of which was not even attempted, that Wilcox purchased the car involved in the accident from Weigand; that he procured it from the Nash distributor in Milwaukee on order from Weigand; that he thereafter paid to Weigand the amount of the cash payment and then had the car financed by the Eau Claire Citizens Loan and Finance Company, which paid the remainder of the purchase price to Weigand. This all antedated the accident about a month. Weigand had been fully paid and clearly had no interest in the car.

The contention that the particular trip on which the accident occurred was dictated by Weigand is without support in the evidence. Woodard had theretofore, on two different occasions, purchased from Weigand a Nash and a used Nash. For some time prior to the accident he had been driving a Chrysler with which he was not satisfied. About two months before the accident he had made a proposal to trade for a Nash. His proposition was not satisfactory to Weigand as Woodard wanted too large a credit for his trade-in. Wilcox, however, was keeping in touch with him. Several days before the accident Wilcox had taken Woodard to his home in Bloomer as an accommodation. On the day of the accident Wilcox received a telephone call from Woodard asking him to come to Bloomer and transport him to Eau Claire, telling him that probably a deal could be

brought about. Weigand knew nothing of this telephone call or of Wilcox's trip to get Woodard. There is no evidence from which the inference may be drawn that Weigand directed or dictated the particular trip. The trip was wholly consistent with the relationship of employer and independent contractor.

The contention that certain admissions made by Weigand were sufficient, if believed by the jury, to establish the claimed relationship of principal and agent at the time of the accident, has been given careful consideration. Avis Kruse, a daughter of the plaintiff, reported the accident to the finance company which held a conditional sales contract on her father's car. Mr. Norgen, an officer of the finance company, called Mr. Weigand on the telephone and asked him to come to the office of the finance company, which the latter did. Miss Kruse testified that she told Mr. Weigand how she understood the accident happened and that during the course of the interview Mr. Weigand said that "they," meaning Wilcox and his companion, "were out on company business and that the car was belonging to the company;" that he suggested the writing of a letter embodying the Kruse version of the accident and their claims so that he might forward it to his insurance company. The statement that "they were out on company business" is no more an admission that Wilcox was on the business as an agent than it is an admission that he was on that business as an independent contractor. The statement that the "car was belonging to the company" is no more an admission that the car belonged to Weigand than that it belonged to the finance company, as it in reality did. As to the request that a letter be written to Weigand embodying the Kruse version of the accident and the plaintiff's claim against Weigand, it is apparent that Miss Kruse was making claim against Weigand for the Kruse damages. In this situation it would be only natural that Weigand would suggest such a letter so that he

might forward it to his insurance company without in the slightest way admitting liability. He in fact admitted no liability, no responsibility for the accident, and made no promise to settle or pay the damages.

Mrs. Smith testified that she saw Weigand on January 3d after the accident; that at that time Weigand said "we would be properly taken care of;" that immediately thereafter Weigand stepped out and called Wilcox and said "this is the Smiths from Chippewa Falls, I want you to take them over to the finance company," and Wilcox "took us over there." There is nothing in this testimony warranting the inference other than that when the Smiths came in Mr. Weigand, knowing that the Wilcox car was owned by the finance company and believing that it was covered by insurance, therefore referred the Smiths to the finance company. To send the Smiths to the finance company could not amount to an admission of ownership of the car, or of liability for the acts of Wilcox. Other alleged admissions of similar import need not be discussed.

It is the settled law that admissions are generally considered to be the weakest kind of evidence, due to the uncertainty and liability to make mistakes in reporting them. *Dreher v. Fitchburg,* 22 Wis. 675; *Denby v. Willer,* 59 Wis. 240, 18 N. W. 169; *Fillingham v. Nichols,* 108 Wis. 49, 84 N. W. 15; *Grotjan v. Rice,* 124 Wis. 253, 102 N. W. 551. In a very recent case it was held that an admission of a parent that his child was acting as his agent at a certain time, which admission the parent denied making, and which denial left the question in doubt, is of little probative weight and is not sufficient of and by itself to carry the issue of agency to the jury. *Papke v. Haerle,* 189 Wis. 156, 207 N. W. 261.

So, under the circumstances in this case which establish beyond doubt that the relationship between Weigand and Wilcox was that of employer and independent contractor

and that Wilcox and the finance company were the owners of the Nash car, it is held that the admissions (which were as consistent with the relationship of employer and independent contractor as they were with the relationship of employer and employee or master and servant) were, as held by the trial court, insufficient to carry that issue to the jury. When admissions are as consistent with one contention or claim as they are with another their probative value is practically nil.

The learned trial court in its decision painstakingly reviewed the evidence and correctly applied the law established by the decisions of this court. It concluded that Wilcox was an independent contractor and that there was no evidence to support the answer of the jury to question 6 of the verdict as to Wilcox. In so concluding we think the court was unquestionably right.

*By the Court.*—Judgment affirmed.