HUEBNER and others, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 9, 1939—April 9, 1940.*

For the appellants there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Howard A. Hartman* and *Irving T. Babb* of counsel, all of Milwaukee, and oral argument by *Mr. Hartman.*

For the respondent Industrial Commission there was a brief by the *Attorney General, Mortimer Levitan,* assistant attorney general, and *William A. Platz,* law examiner, and oral argument by *Mr. Levitan.*

*Clarence J. O'Brien* of Milwaukee, for the respondent Dorothy Aultmann.

The following opinion was filed February 13, 1940:

NELSON, J. It is undisputed that Aultmann was killed as a result of a collision between his automobile and a railway train while he was engaged in the work of soliciting subscriptions to the Voice, a newspaper published by the plaintiffs, Huebner and Neumann, in the city of South Milwaukee. At the time of his death he had been engaged in that work for three to four weeks.

The examiner found that when Aultmann began the work of soliciting subscriptions he was assigned to a definite territory known as the rural territory; that he was required to check in at the end of each day's work; that he was furnished with some copies of the Voice and with subscription blanks and was directed as to the use and manner of filling out said blanks; that he was from time to time given copies of the Voice subscription cards and directed to make collections of subscription accounts; that his pay was fixed at fifty per cent of the amounts collected by him; that one of the plaintiffs believed that the arrangement between the partnership and the deceased was such that he had the right to tell the deceased what to do; that the plaintiffs had the right to direct and control the details of the deceased's work, and in practice

exercised that right in so far as it was necessary to accomplish the will of the plaintiffs.

The examiner concluded that the deceased, at the time of his injury, was working for the plaintiffs under an express contract of hire and was an employee of the partnership, not an independent contractor.

The examiner further found that at the time of his injury the deceased was engaged in selling newspapers from house to house and was, at that time, performing services growing out of and incidental to his employment. An award was accordingly made. The principal question determined by the examiner was whether the deceased, at the time of his injury and death, was an employee of the plaintiffs or an independent contractor. The award was affirmed by the commission. The circuit court, after expressing considerable doubt, confirmed the award.

It appears that during the last part of June or the early part of July, the deceased applied to the plaintiffs for the work of soliciting subscribers. He had theretofore had some experience soliciting subscribers for another paper. He was authorized to do that work on a straight commission basis. He was authorized to retain fifty per cent of collections made by him on new subscriptions. He was assigned territory outside of the city. He furnished his own automobile, paid his own expenses, had no moneys advanced to him, worked when he wanted to, was given no directions as to where in the rural territory he should solicit, whom he should solicit, how he should solicit, or when he should solicit. The work in which he was engaged involved no services except that of soliciting subscriptions, collecting the amounts thereof, reporting the names of new subscribers to the plaintiffs, and turning over to them one half of the subscriptions collected. He was furnished with subscription blanks and certain records relating to old subscribers. He was from time to time furnished copies of recent issues of the Voice. He was required to report the names of new subscribers and to turn

over to the plaintiffs one half of the subscriptions collected by him. There is nothing in the record to show that he did not work on a strictly commission basis, or that while performing such work of soliciting subscriptions he was in any manner subject to the direction or control by the plaintiffs as to such work or the manner of pursuing or executing it. In a number of cases involving substantially similar facts it has been held that the resulting relationship is that of employer and independent contractor, not that of master and servant or employer and employee. *Badger Furniture Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288; *Henry Haertel Service, Inc., v. Industrial Comm.* 211 Wis. 455, 248 N. W. 430; *Kolman v. Industrial Comm.* 219 Wis. 139, 141, 262 N. W. 622. See also *Kruse v. Weigand,* 204 Wis. 195, 235 N. W. 426, and *Kassela v. Hoseth,* 217 Wis. 115, 258 N. W. 340. In those cases, and many others referred to therein, it has always been held that "the principal test to be applied in determining whether one rendering services for another is an employee or an independent contractor is whether the employer has the right to control the details of the work. This is the dominant test, although there are other things to be considered, such as the place of the work, the time of the employment, the method of payment, and the right of summary discharge of employees." *Habrich v. Industrial Comm.* 200 Wis. 248, 227 N. W. 877, specifically approved in *Kolman v. Industrial Comm., supra.*

The defendants contend that the findings of the commission may not be disturbed if there is credible evidence to sustain them. This, of course, is elementary and requires no citation of authority.

They further contend that where it appears that one is injured while performing services for another it will be presumed, for the purposes of the compensation act, that the person was an employee, and therefore the burden to prove otherwise rests upon him who seeks to defeat compensation. *Habrich v. Industrial Comm., supra; McKesson-Fuller-Mor-*

*risson Co. v. Industrial Comm.* 212 Wis. 507, 250 N. W. 396; *Kolman v. Industrial Comm., supra.* That presumption, however, is a rebuttable presumption, and ceases to have force or effect when evidence to the contrary is adduced.

They further contend that the findings of the commission are supported by the evidence, and that they support the conclusion that the deceased was an employee and not an independent contractor. Let us examine the findings.

(1) The deceased was assigned to a definite territory in which to solicit subscriptions. Obviously, that finding is of no materiality in determining whether he was an employee or an independent contractor. An independent contractor may be assigned definite territory and excluded from other territory. *Medford L. Co. v. Industrial Comm.* 197 Wis. 35, 221 N. W. 390; *Kruse v. Weigand, supra*; *Kolman v. Industrial Comm., supra; Kassela v. Hoseth, supra.*

(2) The deceased was required to check in at the end of each day's work. He was required to report promptly the names of new subscribers and to turn in one half of the amount of the subscriptions collected by him. That finding is without materiality on the relationship between the plaintiffs and the deceased. Such requirement amounted to nothing more than supervision of the end or ultimate result. *Medford L. Co. v. Industrial Comm., supra; Kassela v. Hoseth, supra; Employers Mut. Liability Ins. Co. v. Brower,* 224 Wis. 485, 272 N. W. 359.

(3) The deceased was furnished with some copies of the Voice and with subscription blanks and was directed as to the use and manner of filling out said blanks. That finding is of no materiality in determining the question whether the deceased was an employee or an independent contractor. *Henry Haertel Service, Inc., v. Industrial Comm., supra; Badger Furniture Co. v. Industrial Comm., supra.*

(4) The deceased was, from time to time, given copies of the Voice subscription cards and directed to make collec-

tions of subscription accounts. There is no testimony to the effect that the deceased was directed to make collections of subscription accounts other than those involving new subscriptions, although concededly during the time he worked he did bring in two renewal subscriptions. However, he was paid nothing for so doing. During the time that he worked he obtained about two hundred seven new subscriptions, of which about one hundred fifty were paid for during the three or four weeks he worked. The bringing in of two renewal subscriptions should at most be regarded as acts done by him as an accommodation to the plaintiffs or to the old subscribers, which naturally he would perform as an incident of his work. *Badger Furniture Co. v. Industrial Comm., supra.* There is no testimony to dispute the testimony of the plaintiffs that the deceased was not to solicit old subscribers, was not to make collections as a part of his regular duties, and was not to receive any pay for so doing.

(5) One of the plaintiffs, Neumann, believed that the arrangement between the partnership and deceased was such that he had the right to tell deceased what to do. This finding is based upon the following questions and answers:

"*Q.* Do you consider you have a right to tell Mr. Aultmann what work to do? *A.* I didn't give any instructions.

"*Q.* No, do you consider him part of the business to give him instructions what to do, as being a partner, owner in the business? *A.* I would say so.

"*Q.* You consider him one of your newspaper family? *A.* No."

What meaning can be given to these answers, a mere conclusion of the witness, is to say the least, very uncertain. Did the witness have in mind the instructions which he, as a partner, might properly give to an independent contractor, or those in the realm of the right to control the details of the work? What his real meaning was, was not made clear. To select out that single answer, which is a mere conclusion and not probative of the facts, *Kolman v. Industrial Comm.,*

*supra,* and base a finding upon it, is not persuasive on the question of the right to control the details of the work, in view of all the other testimony so strongly tending to show the contrary.

(6) The plaintiffs, in practice, exercised the right of control in so far as it was necessary to accomplish their will. There is no testimony tending to show that the plaintiffs did anything at all to direct or control the details of the deceased's work.

The cases hereinbefore cited which we deem controlling, involved incidents of much greater probative effect than the incidents relied on here. We conclude that the trial court erred in not setting aside the conclusion that the deceased was an employee, not an independent contractor, and the award based thereon.

The defendants further contend that in any event, the deceased, at the time of his injury and death, was engaged in selling or distributing newspapers from house to house and his widow is therefore entitled to compensation. Sec. 102.07 (6), Stats. 1937. That statute provides:

"(6) Every person selling or distributing newspapers or magazines on the street or from house to house. Such a person shall be deemed an employee of each independent news agency which is subject to this chapter, or (in the absence of such agencies) of each publisher's (or other intermediate) selling agency which is subject to this chapter, or (in the absence of all such agencies) of each publisher, whose newspapers or magazines he sells or distributes. Such a person shall not be counted in determining whether an intermediate agency or publisher is subject to this chapter."

It is contended that in soliciting subscriptions for a newspaper, the deceased was selling newspapers. We think that construction is so strained as not to be permissible even under the liberal construction which this court has always given the compensation act. In pursuing the work of soliciting subscriptions, the deceased was not engaged in selling news-

papers. That section was undoubtedly enacted to protect newsboys who were engaged in selling newspapers and magazines on the street or from house to house. There is no evidence that the deceased ever sold a copy of the Voice or distributed a copy of it unless exhibiting a copy to and leaving it with a prospective or new subscriber constitutes a distribution. We are of the opinion that the use of the papers in soliciting does not warrant the conclusion that in so doing the deceased was engaged in selling or distributing newspapers from house to house. The award cannot, in our opinion, be sustained under that statute.

*By the Court.*—Judgment reversed, and cause remanded with directions to set aside the award.

FAIRCHILD, J. (*dissenting*). When a workman is injured performing services for another, the burden of showing that there existed an independent relation, differing from that of employer-employee, is upon the employer. *Habrich v. Industrial Comm.* 200 Wis. 248, 227 N. W. 877; *McKesson-Fuller-Morrisson Co. v. Industrial Comm.* 212 Wis. 507, 250 N. W. 396. Counsel for appellants concede this.

An independent contractor is logically an individual whose business is separate from the employer. If we consider him as occupying a status, it would be one of such completeness as to remove immediate control of the details of the work from the employer. To place himself in such a position, the employer must do something to set apart from himself the work he intrusts to the independent contractor. *Madix v. Hochgreve Brewing Co.* 154 Wis. 448, 143 N. W. 189; *Employers Mut. L. Ins. Co. v. Industrial Comm.* 230 Wis. 670, 284 N. W. 548. The failure of the appellants to satisfy the commission that they placed the right of control in Aultmann resulted from evidence tending to show that this right was retained and exercised by the appellants. Unless the independent-contractor status appears from the evidence, an em-

ployer-employee relationship exists. We assume that the
work Aultmann was doing for appellants might have been
done under either arrangement. The problem is to discover
which character of employment resulted from the negotia-
tions of the parties. The law being as stated above, the con-
testant to be successful must produce evidence contradicting
the *prima facie* case of the employee status which stands
good until answered.

The Industrial Commission in passing upon the evidence
to which brief reference is made concluded that Aultmann
at the time of the injury was an employee of appellants and
not an independent contractor. It is reasonably clear that
Aultmann was engaged through Mr. Holcomb, the circula-
tion manager of appellants. Aultmann was to secure sub-
scriptions in a district not covered by other solicitors, and
made up of rural territory, for which he was to be paid fifty
per cent of the paid-up subscriptions obtained by him. Ap-
parently nothing was said by either party indicating that he
had in mind any particular relation under which the work
was to be done so far as independent-contractor or employee
status is concerned. Holcomb said in response to Ault-
mann's request for work that he had no other way than by
commissions of financing soliciting subscriptions for the
paper "because I had to make my circulation part of my
expenses." It appears that Aultmann began working very
shortly after the conversation occurred. Holcomb testified
that he figured Aultmann knew the territory as well as he
himself did; that others were working on the same basis;
that he, Holcomb, had intended to take care of this work
himself; and that "possibly the reason Aultmann was given
my work to do was that it was work that should have been
done. . . . The other boys work the same identical way; it
wasn't our plan to put solicitors on a weekly salary basis
because the circulation doesn't net that." He also testified
"I told him [Aultmann] to check in whenever he had sub-

scriptions; his instructions were to check in approximately every day." One of the solicitors who Holcomb said worked in the same identical way testified that when he started working he was told that "if anything happened to us" we would be taken care of.

It is difficult to produce a further analysis of details in the situation before us, because of the simplicity of the arrangement. There was an immediate contact between the appellants and Aultmann. All he did appears to have been done with the knowledge of the employer and in response to suggestions from that source made during frequent conferences and instructions, rather than in the carrying out of specific stipulations of an independent contract. It is claimed there was no attempt by the appellants to regulate the amount of time Aultmann was to devote to the work. As a matter of fact, the evidence seems to me to show that Aultmann diligently applied himself to the task, and that he checked in and reported regularly. His supervision by the appellants and his response thereto were such as to show an intent on his part, and an expectation on the appellants' part, that he was to work under their supervision until the task was ended. The evidence here shows a desire on Aultmann's part to earn some money and a willingness on the part of the appellants to avail themselves of his services. It carries the inference drawn by the Industrial Commission. Questions arising from time to time during the progress of the work were resolved by the appellants and according to their wishes. The meager negotiations resulted in an employment which was not an independent-contract relation. Subsequent direction and supervision by the employer as the work progressed did not in this instance fashion the arrangement into a definite contract in which one having work to be done engaged an independent contractor to do it. At all times the parties were closely associated while the work was progressing. As pointed out, the specific stipulations did not extend beyond

Aultmann's expressing a desire for work and the appellants' accepting his offer on terms of a commission arrangement. Duties and obligations grew as the matter proceeded and details were adjusted from time to time. Under such circumstances I doubt that "control" has been taken out of the one having the work to be performed and given to the one employed to do it, so as to change the status from one hired to help in the employer's work to that of an independent contractor attending to his own business.

There are cases where it was held on facts somewhat similar to those of this case that an independent-contractor relationship was created. *Badger Furniture Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288, is cited among them. But the close contact existing between the parties in the instant case did not exist in that case, nor was the same exercise of control present. In the *Badger Furniture Case* and in the case of *Henry Haertel Service, Inc., v. Industrial Comm.* 211 Wis. 455, 248 N. W. 430, there was positive evidence of independence in control of details by the independent contractor. In the last case at page 458 it is said: "The facts disclose that appellant [employer] exercised no control over the details of the work performed and that Belknap sold monuments considerably distant from the place of business of appellant." It is also mentioned in that case that the agent there made no daily reports to the company. In those cases, and similar ones, the claim of existence of the independent-contractor relationship was supported by a practice consistent with that status which had been followed for a considerable length of time fixing that relation with definiteness. Close cases of this kind have arisen and will continue to arise from the dealings between those having work to do and those engaged in rendering service, and each case must be decided upon its peculiar circumstances. I am of the opinion that the case at bar falls

within the doctrine of such cases as *Eagle v. Industrial Comm.* 221 Wis. 166, 266 N. W. 274; *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117; *Habrich v. Industrial Comm., supra; McKesson-Fuller-Morrisson Co. v. Industrial Comm., supra,* and that the judgment should be affirmed.

I agree with the majority in the other conclusions.

Mr. Justice FRITZ and Mr. Justice WICKHEM authorize me to state that they concur in this dissent.

A motion for a rehearing was denied, without costs, on April 9, 1940.