Hume and another, Appellants, vs. Industrial Commission
and another, Respondents.

*October 18—November 20, 1945.*

For the appellants there was a brief by *North, Bie, Du-quaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan*, assistant attorney general, and oral argument by *Mr. Levitan*.

MARTIN, J.   The facts are, in substance, as follows: On July 30, 1943, defendant Pelky fell from the roof of a barn, injuring himself.   For several years prior to 1941 he had been employed by roofing companies.   For about two years before the accident he had operated an oil station, also operated a small farm, and did some roofing work for friends.   He put in full time at the filling station in the winter and part time in the summer, spending some time on the farm and part time on roofing jobs.   He had one steady employee and in the summer had a young fellow working part time.   He had four roofing jobs in 1943 before the accident and about ten in 1942, although he did not keep track.

The normal roofing season is from June to December.   On some jobs he employed a helper, others he did alone.   On jobs other than the one in question he bought the material from a wholesaler.   He had some equipment and borrowed additional equipment he might need; on the job in question plaintiff Hume furnished the additional equipment needed.   He did no formal advertising and had no solicitor.   He testified that his "regular business is a filling-station operator and a part-time farmer, and I do some roofing work for friends."

Plaintiff Hume had a roof to put on and no men available and he was told he could probably get Pelky.   Hume called on the defendant at the filling station and defendant agreed to put on the roofing for $1.75 per square.   Pelky·employed a helper on this job and his agreement with the helper was to split the

proceeds fifty-fifty. Pelky did not mention to plaintiff who he had or what their agreement was. They hired another man who worked on the job part of one day.

Plaintiff agreed to have the materials on the job so that they could start on a Tuesday morning. It was understood that they would work on the job until it was completed, and Pelky estimated that he would complete the job on the following Saturday or Monday. Hume inspected the work two or three times to see how it was going and if additional materials were needed, and he furnished more materials to the job. When defendant was injured the work was about two-thirds done. Plaintiff came to the hospital to see Pelky and Pelky told him of men that could finish the job. Pelky had someone at his station get hold of the men and send them to plaintiff. After the work was completed plaintiff tendered payment for the entire job to defendant. He then distributed the payment in three checks pursuant to a definite agreement with Pelky.

Pelky testified that for two years before the accident he had been taking roofing jobs, hired his own men, and controlled the work; that he had some equipment and borrowed other equipment. Both Hume and Pelky testified that on the job in question Hume had the right to control the details of the work and that he had the right to discharge.

On these facts the examiner found that:

"Respondent Hume had a right to direct and control the details of the work and could have taken the applicant and his helper off the job and put other men on to finish if he had been dissatisfied with the work which they were doing."

The examiner further found:

"The examiner concludes and finds that the applicant did not maintain a separate business as a roofer; that he did not hold himself out to and render service to the public as a roofing contractor; that he was not subject to the Workmen's Com-

pensation Act; that at the time of the accident he was an employee of the respondent Charles M. Hume and performing service for him under a contract of hire and that the injury arose out of said employment."

Appellants contend that Pelky was an independent contractor and not an employee of Hume. There is applicable the presumption that Pelky was an employee of Hume. In *Montello Granite Co. v. Industrial Comm.* 227 Wis. 170, 183, 278 N. W. 391, the court said:

"When a person is injured while performing services for another, a presumption arises in favor of the injured person that he is an employee of the person for whom the service is being performed, and not an independent contractor. That rule casts the burden upon him who seeks to defeat compensation."

This presumption is rebuttable and ceases to have force or effect when evidence to the contrary is adduced. *Huebner v. Industrial Comm.* 234 Wis. 239, 243, 244, 290 N. W. 145. The principal test for determining the relationship, whether Pelky was an employee of Hume or an independent contractor, is who had the right to control the details of the work. *Woodside School Dist. v. Industrial Comm.* 241 Wis. 469, 471, 6 N. W. (2d) 182, and cases there cited. In *Employers Mut. L. Ins. Co. v. Industrial Comm.* 230 Wis. 670, 676, 284 N. W. 548, the court said:

"It is quite immaterial whether the right to control is exercised by the master so long as he has the right to exercise such control." See cases there cited.

The testimony as to the right to supervise and control the details of the work is as follows: Pelky was asked:

"*Q.* While you were laying the roof out there, if Mr. Hume, while he was out there had wished this roof to be laid some other way than the way you did it, would you consider he had a right to order you to do so?

"Mr. Trowbridge: Objected to as leading and suggestive.
"The Examiner: He may answer subject to the objection.
"*A*. Yes, sir."

Hume went to look at the job two or three times between July 27th and July 30th while Pelky was putting on the roofing. He testified:

"*Q*. But if you went out there and saw they were starting wrong—at the wrong end of the barn—do you start it at the top or bottom? *A*. At the bottom.
"*Q*. At the left-hand corner. If you had gone out there the first day and saw them starting at the top that would have been wrong? *A*. I expect it would.
"*Q*. And you would have told them that was not the place to start? *A*. Yes, sir."

He further testified:

"I supervise all my jobs that I am responsible for."

Regardless of the relationship between Hume and Pelky, Hume was responsible to the owner for the job in question. Pelky was an experienced roofer, having been employed by at least two roofing companies for several years prior to 1941. There was, therefore, no occasion for Hume to exercise control over the details, but the *right* to control is the principal test of the relationship. Other factors must be considered. In *Habrich v. Industrial Comm.* 200 Wis. 248, 252, 227 N. W. 877, the court said:

"The principal test is whether the employer has the right of control with reference to the details of the work. This is the dominant test, although there are other things to be considered, such as the place of the work, the time of the employment, the method of payment, and the right of summary discharge of employees. It has been said that the status of an independent contractor is the more readily inferable where the contract calls for the performance of an entire piece of work at a specified price. This latter condition is probably necessary in popular understanding in order to give rise to the status of an independent contractor. While it is not indis-

pensable in law, it is not without its influence in a determination of the question." To same effect see *Kolman v. Industrial Comm.* 219 Wis. 139, 141, 262 N. W. 622.

In *Badger Furniture Co. v. Industrial Comm.* 200 Wis. 127, 130, 227 N. W. 288, the court said:

"In reaching a conclusion, of course there are other things to be considered besides the question of control, to wit: The nature of the business or occupation; which party furnishes the instrumentalities and tools; the place of work; the time of employment; the method of payment, and the intent of the parties to the contract."

In the instant case Hume furnished and delivered on the job all the roofing material, a part of the necessary equipment to be used,. and paid Pelky and his helper $1.75 per square for putting on the roofing. Pelky and his helper shared equally in the money received for the work. The examiner found that Hume "had a right to direct and control the details of the work and could have taken the applicant and his helper off the job and put other men on to finish if he had been dissatisfied with the work which they were doing." In this connection, Pelky testified:

"I felt that he had the right to discharge me at any time, because nothing was said about finishing the job; if I was doing poor work he would have a right to fire us."

Hume testified:

"*Q.* Now on these occasions when you went out and found they were putting the roof on all right, suppose there had been defective workmanship, and it was not being done right. Assume they didn't know how to put it on, could you have taken them off the job? *A.* Yes, I would have tried to. I think I would.
"*Q.* You would have taken them off and put on somebody else who could do the job? *A.* Yes, sir."

There is no evidence to the contrary.

Hume had regular employees but at times he also hired other men exclusively for roofing. In *Madix v. Hochgreve Brewing Co.* 154 Wis. 448, 452, 143 N. W. 189, referring to significant characteristics of an independent contractor, the court said:

"Other significant characteristics of an independent contractor are that he is usually engaged in carrying on an independent employment or business, and customarily contracts to do a given piece of work for a specified sum of money and is responsible for the result thereof, while a servant usually works by the hour, day, week, or month, and is not responsible for the result of the work beyond performing his own labor in a workmanlike manner."

In *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117, the payment was twenty cents per cwt. for hauling milk, and in *Allaby v. Industrial Comm.* 200 Wis. 611, 229 N. W. 193, the payment was $1.50 per one thousand feet of logs cut, and in both cases the injured man was held to be an employee.

On the whole record we cannot say that there is no credible evidence to sustain the finding "that at the time of the accident he [Pelky] was an employee of the respondent Charles M. Hume and performing service for him under a contract of hire and that the injury arose out of said employment."

Respondent also contends that even if Pelky were an independent contractor he was, nevertheless, an employee for the purposes of the compensation act under sec. 102.07 (8), Stats. In view of our conclusion as indicated above, we need not consider the applicability of sec. 102.07 (8). That question would arise only if the evidence did not sustain the finding that Pelky was an employee as a matter of fact.

*By the Court.*—Judgment affirmed.