HARRIS, Respondent, v. RICHLAND MOTORS, INC., and another, Appellants.

*May 7—June 2, 1959.*

For the appellants there was a brief by *Roberts, Board-man, Suhr, Bjork & Curry* of Madison, and oral argument by *Walter M. Bjork*.

For the respondent there was a brief by *D. V. W. Beckwith* of Madison, and *Brewer, Robb & Fitzgerald* of Richland Center, and oral argument by *Mr. Beckwith*.

FAIRCHILD, J.   Defendants contend (1) that there is no issue of fact as to the relationship between Richland Motors and Holloway and Holloway was an independent contractor; (2) that there is no issue of fact as to the ownership of the car and it belonged to Holloway; (3) that if Holloway were the owner, the insurance policy would not provide coverage.   Plaintiff asserts that there is an issue of fact as to the first two propositions and disputes the validity of the third.

(1) *Relationship between Richland Motors and Holloway.* Several decisions of this court deal with the status of a salesman who receives his compensation in the form of commissions on sales and who does not work according to a regular schedule nor at a specific location.

In *James v. Tobin-Sutton Co.* (1923), 182 Wis. 36, 195 N. W. 848, it was held as a matter of law that one who sold automobiles for a commission was an independent contractor.   In that case the salesman was required to report each morning at a meeting where the previous day's work was discussed and prospect cards were handed out.   It was noted in the opinion, at page 40, that after reporting, "he was his own master.   He could work or not as he saw fit.   He could go where he pleased and pursue any lawful method of making a sale."   It was said, at page 38, that the principal point of distinction between the status of servant and independent contractor "was the degree of retention by the employer or principal of the right to control the manner in which the details of the work were to be done."

In *Badger Furniture Co. v. Industrial Comm.* (1929), 200 Wis. 127, 227 N. W. 288, it was held as a matter of law that one who sold furniture for a commission was an independent contractor. That salesman paid his own expenses, had no drawing account, and was free to sell anywhere in Wisconsin except for one area assigned to another. The court discussed the principle that the relationship is to be determined by the contract between the parties but that it may be necessary to determine from the conduct of the parties what the contract was. At page 129, it was said,

"Whether or not a person is an independent contractor or a servant depends upon the right of control by the principal over the person engaged to do the work. The mere fact that the principal exercises such control is not significant if he has no right of control. The test is to be determined by the contract, not by the course of conduct. However, when the terms of the contract are in doubt, the course of conduct of the parties in the execution of the contract may be considered as an aid in construing the contract, but when the contract is determined, the right of control by the principal over the person doing the work is generally considered the important test."

In *Kruse v. Weigand* (1931), 204 Wis. 195, 235 N. W. 426, it was held as a matter of law that one who sold automobiles for a commission was an independent contractor. That salesman was given an allowance for operation and maintenance of his car. His principal told him he could come and go as he pleased, gave him the names of prospects, determined the amount of credit for a car taken in trade, and approved extensions of credit. The court said, at page 201, "The details of selling cars, meeting with and soliciting prospects, were all under the control of Wilcox, who could and did pursue his work when and as he saw fit. . . . Wilcox was wholly free under the arrangement to work

when and where and as much or little as he pleased so far as the details of selling cars were concerned."

In *Thurn v. La Crosse Liquor Co.* (1951), 258 Wis. 448, 46 N. W. (2d) 212, it was held that there was a jury issue whether one who sold liquor for a commission was a servant or independent contractor. Notwithstanding testimony of the manager of defendant that it reserved no right to control the salesman's activities, other testimony referred to in the opinion could lead to the opposite conclusion. The court again stated that the principal test is whether the employer has the right to control the details of the work.

"Servant" is defined in Restatement, 1 Agency (2d), p. 485, sec. 220, as one who "with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

We conclude, as did the circuit court, that the record discloses evidentiary facts from which it could be inferred that Ferguson had a right to control Holloway's activities to a degree sufficient to constitute their relationship that of master and servant. Portions of an adverse examination of Ferguson were summarized or quoted in an affidavit filed on behalf of plaintiff. In part Ferguson described a course of conduct and in part he stated his own views of the rights he had under the arrangement between them.

Ferguson testified that he had "hired" Holloway as a salesman; that Holloway had the right "to quit" and Ferguson the right to "discharge" him at any time; that Holloway was the only salesman that the company had; that Ferguson managed the business and also handled sales; that Ferguson established the value of a used car taken in trade whether the sale had been made by Holloway or Ferguson; that Ferguson quite frequently relied on Holloway's judgment in the sale of a used car, but would make the decision if there were a difference of opinion. Ferguson decided

through which company cars would be financed and financed some of the cheaper cars himself; if one of Holloway's customers got behind on his payments on one of these cars, Ferguson would feel free to send Holloway out to make collection or to repossess the car. Ferguson had the right to review Holloway's list of prospects and to ask him to whom he was selling or where he was going. Ferguson had the right to send Holloway out to call on prospects that Ferguson had dug up.

As a rule Ferguson sent Holloway to call on prospects outside the garage and Ferguson tried to stay at the garage most of the time. When Ferguson was required for some reason to be away for a day or more, he would have Holloway stay at the garage to take care of prospects who might come in. Holloway had to clear with Ferguson before he could make any price reduction. Ferguson had the right to send Holloway out to buy used cars for the company and the right to send Holloway to Kenosha to drive new cars to Richland Center when necessary. Ferguson felt free to ask Holloway to be present Friday evenings to help with sales. Holloway was a good salesman and Ferguson did not think it was necessary to supervise his salesmanship. Ferguson passed on the credit of the buyer of any car that might be sold. Holloway had a continuing job to see that Nash cars were sold because it was necessary to sell new Nash automobiles in order to remain a Nash agency. Holloway customarily bought used cars for himself, approximately one a month, but these cars were not held out as his automobiles and were advertised and sold as cars of the company. Holloway was entitled to the profit on the sale of such cars if he sold them, but gave Ferguson a commission if Ferguson sold them. Ferguson deducted from Holloway's commission payments social security, withholding tax, and premium on group insurance. On the afternoon before Holloway was killed, he left about 4 or 4:30 p. m. for the purpose of trying

to sell a new or used car to a prospect they had heard of between LaFarge and Viola.

It is clear from the foregoing recital that some of the facts are similar to cases in which the court has decided as a matter of law that the relationship was that of independent contractor. There are, however, other facts tending to show that Ferguson had the right to control Holloway's activities to a very substantial degree. The facts set forth do not resolve the question with certainty.

(2) *Ownership of car.* Holloway at times bought cars for Richland Motors and at times bought cars for himself. The record kept by the owner of the auction at Cuba City indicated that this car was sold to Richland Motors and it was his practice to sell only to dealers. Payment for the car was effected by a draft signed by Holloway and drawn on the bank where he had an account. ·This fact would permit an inference that he purchased the automobile for his own benefit. The conditional sales contract would, on its face, indicate that Richland Motors became the owner and later sold the car to Holloway. Yet Ferguson's affidavit states that the purpose of the conditional sales contract was to assist Holloway in borrowing on the car so that he could have funds with which to purchase another car. It appears that the conditional sales contract does not correctly describe the transaction which actually occurred.

Two items of evidence tend to show that the car may not have belonged to Holloway. Ferguson stated that when Holloway purchased an automobile the title would be made out in Ferguson's name (probably the name of Richland Motors). They were advertised and sold as Ferguson's cars and when sold Ferguson transferred the title and "I had them or intended to have them under my automobile garage liability policy and I put my garage license plates on them." In the instance of the Rambler automobile involved in this case the title had not been received. In the normal course

of business Ferguson said it would have been assigned to him when received. "If this car had not been wrecked, whether he bought it for himself or whether he bought it for me, the title would go in my name and I would transfer the title to whoever purchased the car."

Plaintiff filed an affidavit of Kenneth DeWitt who asserted that he is the owner of a tavern in Readstown; that sometime prior to the accident he had told Holloway that he would be interested in buying a 1951 to 1953 Rambler if Holloway ever had one for sale; that on the evening of March 4th Holloway called on DeWitt about selling him the 1953 Rambler which Holloway was driving at that time; that DeWitt offered Holloway either $400 or $500 plus DeWitt's old car and that Holloway was asking a higher price; that after some discussion Holloway told DeWitt, "I will have to check with the boss to see if I can trade for your figure," and then told DeWitt that he would see his boss and be back at a later date.

Holloway's statement to DeWitt implied that Richland Motors had some right to control the terms of the sale of the Rambler. One could draw the inference that Richland Motors owned it. Defendants insist that DeWitt's testimony would be incompetent under the hearsay rule to prove the fact of ownership. Plaintiff asserts two exceptions to the rule under either of which he claims the testimony would be competent. The circuit court agreed.

"The exception is that the declarations of persons, since deceased, are admissible in evidence provided that the declarant had peculiar means of knowing the matter stated, if he had no interest to misrepresent it, and if it was opposed to his pecuniary or proprietary interest." *Truelsch v. Miller* (1925), 186 Wis. 239, 246, 202 N. W. 352. 2 Jones, Evidence (5th ed.), p. 560, sec. 295. Here the declarant is dead. He was in possession of a car and was attempting to sell it to another. A declaration that he must secure a third

party's approval before sale (from which it may be inferred that the third party was the owner) was against his pecuniary or proprietary interest. We agree that under this exception the DeWitt affidavit may be considered upon the motion for summary judgment. Defendants argue that Holloway might well have made the statement for tactical purposes in his negotiations for a sale. This proposition would go to the weight of the evidence rather than its competency.

The other exception invoked by plaintiff is that the statements of an agent made within the scope of his employment and within the actual or apparent authority from the principal are binding upon the latter. 20 Am. Jur., Evidence, p. 505, sec. 596. We do not deem this exception applicable here. Whether or not Holloway had authority to speak for Richland Motors while he was negotiating for the sale of the Rambler depends upon the ownership of the Rambler, the very issue of fact which the statement is offered to resolve. The fact of agency must be proved by evidence other than the declaration by the alleged agent. 2 Jones, Evidence (5th ed.), p. 668, sec. 355.

We conclude as did the circuit court that the record discloses that there is an issue of fact as to the ownership of the automobile.

(3) *Question of insurance coverage.* Defendant Insurance Company asserts that if the car were owned by Holloway, its policy would afford no coverage. Plaintiff contends that the policy covers any automobile while being used in the business of the insured, whether or not owned by an employee. The issue of coverage may or may not arise after the issues of fact have been determined, and we express no conclusion on that issue.

*By the Court.*—Order affirmed.

MARTIN, C. J., took no part.